UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREY CHOLEWA,

                    Plaintiff,

v.

UNITED STATES OF AMERICA,
*et al.*,
                    Defendants.
_____/

Case No.: 19-cv-12190
Hon. Gershwin A. Drain

## OPINION AND ORDER DENYING UNITED STATES OF AMERICA'S MOTION TO DISMISS [#13], DENYING DR. JENNIFER ROBINSON'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS [#18], AND DENYING WITHOUT PREJUDICE DR. JENNIFER ROBINSON'S PETITION FOR SUBSTITUTION AND REPRESENTATION PURSUANT TO 28 U.S.C. § 2679(d)(3) [#19]

### I.    INTRODUCTION

Plaintiff Trey Cholewa filed the instant action pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, alleging medical malpractice, negligence, and medical battery claims against the United States of America and Dr. Jennifer Robinson, a psychiatrist employed at the John D. Dingell VA Medical Center (VA Center) in Detroit, Michigan.

Both the United States and Dr. Robinson have filed Motions to Dismiss. Also, pending before the Court is Dr. Robinson's Petition for Substitution and Representation by the United States. These matters are fully briefed, and a hearing

was held on August 4, 2020.  For the reasons that follow, the Court will deny the parties' respective motions to dismiss and will also deny as premature Defendant Robinson's Petition for Substitution and Representation by the United States.

## II.    FACTUAL BACKGROUND

Plaintiff is a veteran of the United States Armed Forces.  ECF No. 9, PageID.58.  He began treating at the VA Center for post-traumatic stress disorder (PTSD) and traumatic brain injury in May of 2015.  *Id.*  In October of 2015, Defendant Robinson began treating Plaintiff for his conditions.  *Id*.  Dr. Robinson treated Plaintiff for nearly two years. Initially Plaintiff's sessions occurred less than once per month, however they increased in frequency to twice per week.  *Id*. at PageID.57-58.

Plaintiff alleges that during the course of his treatment, Dr. Robinson breached her professional duties in numerous ways, including failing to obtain and document an accurate medical history, failing to properly document patient sessions and therapeutic measures, and failing to make necessary referrals in a timely manner. *Id* at PageID.329. In addition to these breaches, Plaintiff asserts that from the inception of his treatment, Dr. Robinson made comments of a sexual nature and made advances towards him. *Id*.  Plaintiff asserts that Dr. Robinson also breached her professional duties by failing to discontinue her professional

2

relationship with Plaintiff upon recognizing she had an attraction to him and by her failure to refer Plaintiff to an alternative provider.  *Id*.

By March of 2017, Dr. Robinson allegedly escalated her conduct by initiating sexual contact with Plaintiff, including "kissing and fondling him during the course of counseling sessions conducted under the guise of therapy that would be beneficial to him given his underlying psychiatric concerns." *Id*. at PageID.58 (internal quotation marks omitted).  Additionally, Dr. Robinson persuaded Plaintiff to attend impromptu sessions with her "whenever his emotional state was becoming overwhelming, so that she could provide further therapy to him as a calming measure." *Id.* (internal quotation marks omitted).

Dr. Robinson did not enter any notes concerning these impromptu sessions in Plaintiff's medical records, nor were these visits noted in Dr. Robinson's calendar administrated by personnel at the VA Center.  *Id*. at PageID.61.  The sessions involving sexual contact with Plaintiff continued until August of 2017, when Plaintiff claims Dr. Robinson informed him that she had developed personal affection for him and wished "to advance their relationship to a deeper level of romantic connection." *Id*. at PageID.59.

Plaintiff ceased his sessions with Dr. Robinson and began treating with other psychiatrists employed by the United States.  During these sessions, Plaintiff relayed his concerns about Dr. Robinson and the other therapists documented these

concerns.  *Id*. at PageID.69.   In June of 2018, Plaintiff was approached by Dr. Robinson while he was at the VA Center.  *Id*. at PageID.71.  She again expressed romantic interest in Plaintiff, and this made him feel agitated and anxious.  *Id*.

On November 19, 2018, Plaintiff submitted a SF-95 claim seeking monetary damages as a result of Dr. Robinson's misconduct.  ECF No. 13-2.  The VA denied Plaintiff's claim on May 30, 2019.  ECF No. 13-3.  Plaintiff filed the instant action on July 25, 2019.

## III.   LAW & ANALYSIS

### A.  Defendants' Motions to Dismiss

#### 1.  Standards of Review

##### a.  Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction.  The United States' motion to dismiss argues that the Court lacks subject matter jurisdiction over this matter because the FTCA does not waive sovereign immunity for an employee's conduct undertaken outside the scope of her employment.

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter jurisdiction (factual attack)."  *Cartwright v. Garner*, 751 F.3d 752, 759-60  (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

1994)).  "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," while "[a] facial attack challenges the factual existence of subject matter jurisdiction." *Id*.  "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id*. "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id*.

"A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)).

### b.  Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 1950.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001).  Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

### 2.   Scope of Employment

The United States argues Dr. Robinson's acts occurred outside the scope of her employment, thus the FTCA does not waive sovereign immunity and the Court lacks subject matter jurisdiction over this action.  *See F.D.I.C. v. Meyer*, 510 U.S. 471, 479 (1994) (holding that a claim is not cognizable under the FTCA if all six of § 1346(b)(1)'s requirements are not met, including that the employee's conduct occurred while acting within the scope of her office or employment).

"[T]he determination of whether an employee of the United States acted within the scope of employment is a matter of state law." *Flechisg v. United States*, 991 F.2d 300, 302 (6th Cir. 1993); *Sullivan v. Shimp*, 324 F.d 397, 399 (6th Cir. 2003).  In Michigan, an individual acts "within the scope of employment"

when she is "engaged in the service of h[er] master, or while about h[er] master's business." *Hamed v. Wayne Cnty.*, 490 Mich. 1; 803 N.W.2d 237, 244-45 (Mich. 2011). Even when an "act [is] contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. However, "[i]ndependent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id*.

The United States asserts that Dr. Robinson's sexual misconduct was outside the scope of her employment as a matter of Sixth Circuit law. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008). In *Scottsdale*, the plaintiff began treating with the defendant-therapist and saw him five times between October 2001 and July 2002. *Id.* at 550. A few days after the plaintiff's last session, she and the defendant-therapist began a sexual relationship. *Id.* The *Scottsdale* plaintiff brought suit against the therapist for malpractice and the insurance company sought a declaratory judgment that it had no duty to defend the therapist because he was acting outside the scope of his employment when he engaged in a romantic relationship with the plaintiff. *Id.*

Relying on Kentucky law, the *Scottsdale* court held "such sexual activities [are not] within a therapist's scope of employment." *Id.* at 567. The court went on to state that, "[i]ndeed, it is hard to imagine any type of counseling position where

having a sexual affair with a patient would be within the scope of employment." *Id.*

Conversely, Plaintiff and Dr. Robinson urge this Court to rely on the Ninth Circuit's case, *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), which supports their position that Dr. Robinson was acting within the scope of her employment during the events giving rise to this action. *Simmons* and other courts consider mismanagement of transference a form of malpractice that occurs during the course of employment.

In *Simmons*, the plaintiff sought mental health treatment from the Health Service and was counseled by defendant Ted Kammers, a social worker. *Simmons*, 805 F.2d at 1364. During the counseling sessions, Kammers initiated romantic contact and plaintiff and Kammers began a romantic and sexual relationship during the last two years of the plaintiff's treatment. *Id*. The plaintiff filed a claim under the FTCA, and after a bench trial, the plaintiff was awarded $150,000.00 in damages*. Id.*

Relying on the phenomenon of transference,[1] the *Simmons* court concluded that the trial court correctly found that the "abuse of transference occurred within

---

[1] In *Simmons*, expert testimony explained that transference occurs when "the client comes to either consciously or unconsciously, or both, regard the therapist as a child might regard the parent." *Id*. "The proper therapeutic response is countertransference, a reaction which avoids emotional involvement and assists the patient in overcoming problems." *Id*. at 1365. A psychiatrist is regarded as having

the scope of Mr. Kammers' employment[]" because the "centrality of transference to therapy renders it impossible to separate an abuse of transference from the treatment itself."  *Id.* at 1369; *see e.g. Benavidez v. United States*, 177 F.3d 927, 928-30 (10th Cir. 1999) (accepting without review district court's conclusion that the defendant's sexual relationship occurred within the scope of employment as her therapist.); *Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F.Supp. 262, 265 (S.D.N.Y. 1986) (holding that psychiatrist's sex with patient was sufficiently related to the therapy to fall with policy of malpractice insurance); *Doe v. Samaritan Counseling Ctr.,* 791 P.2d 344 (Alaska 1990) (holding that because of transference a therapist's sexual conduct was "incidental" to therapy and within the scope of the defendant's employment under Alaskan law); *but see Bodin v. Vagshenian*, 462 F.3d 481 (5th Cir. 2006) (rejecting *Simmons* and concluding VA psychiatrist's sexual assault of patients was not in furtherance of the clinic's business).

Plaintiff and Dr. Robinson argue that just as in *Simmons*, Plaintiff's allegations of sexual impropriety cannot be divorced from Dr. Robinson's therapeutic relationship with Plaintiff or the scope of her employment as a psychiatrist.  Plaintiff alleges that Dr. Robinson "kiss[ed] and fondl[ed]" Plaintiff

---

"mishandle[d] transference" when she "becomes sexually involved with a patient." *Id*.  It is well settled among the medical community that such conduct constitutes malpractice. *Id*.

during psychological counseling sessions and told Plaintiff this was "a legitimate therapeutic response" to Plaintiff's conditions.   Dr. Robinson argues Plaintiff's allegations are the same as mismanagement of the therapeutic relationship, which was maintained in service to her employer.

The United States counters that the Court cannot rely on *Simmons* because it is thirty-four years old and Ninth Circuit authority that employs Washington law in a way that is diametrically opposed to Michigan's respondeat superior law, and that has been criticized by other courts, including the Washington Court of Appeals in *Thompson v. Everett Clinc*, 71 Wash. App. 548, 553; 860 P.2d 1054 (1993). The Government also argues that Kentucky law on the doctrine of respondeat superior is identical to Michigan's respondeat superior law, thus *Scottsdale, supra,* is controlling.   Lastly, the United States asserts that Michigan courts have rejected the notion that a health care provider's affair with a patient could be within the scope of employment.  *See, e.g., Zsigo v. Hurley Med. Ctr.*, 475 Mich. 215, 221; 716 N.W.2d 220 (2006); *Tolbert v. United States*, No. 17-10273, 2017 WL 6539254, at *2 (E.D. Mich. Dec. 21, 2017); *Doe I v. Young*, No. 335089, 2018 WL 521832, at *7-10 (Mich. Ct. App. Jan. 23, 2018).

Here, contrary to the Government's argument, *Scottsdale* and the Michigan authority it relies upon do not definitively answer whether Dr. Robinson was working within the scope of her employment under the circumstances as alleged by

Plaintiff.  As an initial matter, the facts in *Scottsdale* are distinguishable because they involved five intermittent treatment sessions and a romantic relationship that began after treatment concluded. Here, Plaintiff's allegations concern a doctor-patient relationship extending over a period of years with the sexual misconduct occurring during treatment sessions in the guise of necessary treatment.  Moreover, *Scottsdale* applied Kentucky law, thus it has no bearing on whether Dr. Robinson's acts occurred within the scope of her employment under Michigan law.

Finally, and central to Dr. Robinson's argument, *Scottsdale* did not address the role of transference in psychotherapy. While the *Scottsdale* court acknowledged that "other jurisdictions . . . have distinguished the therapist-patient relationship from typical medical-doctor relationships and found therapists to have acted within the scope of employment when they negligently mismanaged the patient relationship, resulting in a sexual encounter," the *Scottsdale* court refused to consider the issue because the cases relied upon had not engaged in a scope of employment analysis.  *Scottsdale*, 513 F.3d at 568.

Additionally, the Government's reliance on Michigan case law involving sexual assault occurring outside of the mental health treatment context is misplaced and unhelpful to resolving whether Dr. Robinson was working within the scope of her employment. *See Zsigo*, 475 Mich. 215 at 221(concluding nursing assistant assigned to clean the plaintiff's hospital room was not working within the scope of

his employment when he sexually assaulted a restrained plaintiff); *Doe v. Young*, No. 335089, 2018 U.S. Dist. LEXIS 185 (Mich. Ct. App. Jan. 23, 2018) (concluding chiropractor was not working within the scope of employment during sexual assaults of patients).

Moreover, none of the cases applying Michigan law that are cited by the Government involve allegations of psychological or psychiatric mismanagement of therapy during treatment sessions on VA property. *See Tolbert*, 2017 U.S. Dist. LEXIS 209939, at *6 (finding substance abuse counselor was not acting within the scope of his employment when he engaged in a romantic relationship with the plaintiff and encouraged her to drink where there was no allegation that "the romantic relationship occurred during [] work hours or on VA property . . . ."); *Scarberry v. United States*, No. 14-13877, 2015 U.S. Dist. LEXIS 5960 (E.D. Mich. Jan. 20, 2015) (concluding therapist's affair with patient's spouse was outside the scope of employment where "there is no allegation that the relationship was going on during the course of Plaintiff's treatment" or "during [] work hours or on VA property.")

Also, fatal to the Government's argument is its failure to acknowledge the Amended Complaint alleges facts aimed at the treatment provided overall and not just the acts of sexual assault. Plaintiff alleges Dr. Robinson breached a host of professional duties, including failing to provide necessary referrals, failing to

accurately document patient history, sessions and the therapeutic measures implemented, in addition to the sexual misconduct. ECF No. 9, PageID.63-64. The Government would like the Court to focus solely on the last six months of Dr. Robinson's treatment, however there was roughly eighteen other months of treatment that allegedly involved negligent acts and malpractice.

Finally, the Court notes that "multiple courts have recognized, the jurisdictional question [raised by the parties] closely ties into the merits[]" of a plaintiff's FTCA claim. *Anestis v. United States*, 52 F.Supp.3d 854, 858 (E.D. Ky. 2014). As such, some courts have held that "because of this relationship between the merits of the claim and the Court's jurisdiction over it, Rule 12(b)(1) motions should be converted to Rule 56 motions. *Id.* (citing *Bell v. United States*, 127 F.3d 1226, 1228 (10th Cir. 1997); *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004)). The *Anestis* court acknowledged that "[w]hile the Sixth Circuit has not . . . explicitly held that Rule 12(b)(1) motions should always be converted in the FTCA context, it has held that 'if an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should 'find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (citing *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).

Taking into consideration this authority and Plaintiff's Rule 56 affidavit, the Court concludes resolution of whether Dr. Robinson was acting within the scope of her employment requires a full factual record on the details of her therapy. Plaintiff's Rule 56 affidavit sets forth the need for discovery, including, as argued by counsel during the hearing, discovery on the medication regime that Dr. Robinson prescribed to Plaintiff and whether it met professional standards taking into consideration Plaintiff's mental conditions and medical history. Moreover, the Government argues that an evidentiary hearing is needed to resolve the question of scope of employment in regard to resolution of Dr. Robinson's Petition for Substitution.  It therefore appears the Government concedes that discovery is needed to develop a full factual record on this issue.

Based on the foregoing considerations, the Court finds that this issue is better suited after an opportunity for discovery and an evidentiary hearing is held or during the summary judgment phase of the case.

### 3.   Statute of Limitations

The Government also argues that Counts I, II and III of the Amended Complaint are barred by the FTCA's two-year statute of limitations.  The FTCA provides, in pertinent part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]

28 U.S.C. § 2401(b).  A medical malpractice or negligence claim accrues within the meaning of § 2401(b) when the plaintiff knows of both the existence and the cause of his injury, and not at a later time when he also knows that the acts inflicting the injury may constitute negligence or medical malpractice.  *United States v. Kubrick*, 444 U.S. 111, 121-23 (1979).

The Government argues that Plaintiff's allegations reference breaches of the psychologist-patient relationship beginning at the inception of treatment in October of 2015 through August of 2017, yet he did not file his administrative claim with the VA until November 19, 2018.  Thus, Plaintiff's claim is time barred if it accrued prior to November 19, 2016, and according to the Government, it defies logic that Plaintiff did not know Dr. Robinson's sexual comments and advances were injurious to him at any time between October of 2015 and November of 2016. ECF No. 13, PageID.118.

The Government's argument is without merit. Plaintiff's Amended Complaint alleges ongoing tortious conduct by Dr. Robinson through at least June of 2018. Plaintiff's knowledge of his injury from Dr. Robinson's alleged malpractice and mismanagement of the doctor-patient relationship did not occur until after his treatment concluded and he began treating with other psychiatrists. Plaintiff was treating with Dr. Robinson for PTSD and traumatic brain injury. The Court cannot conclude that Plaintiff would have comprehended the alleged

mismanagement of his therapy and abuse by Dr. Robinson at any time prior to the termination of his treatment with her in August of 2017, at the very earliest. Thus, Plaintiff filed his claim within the applicable 2-year statute of limitations, or on November 19, 2018, and the United States is not entitled to dismissal on this basis.

### 4.  Discretionary Function Exception

The Government also asserts that Counts I and II should be dismissed because claims concerning negligent hiring, training and supervision are barred by the FTCA's discretionary function exception—an exception to the waiver of sovereign immunity, which shields the government from claims of negligence arising from discretionary, policy-based conduct.  *See* 28 U.S.C. § 2680(a).

To determine whether the discretionary function exception applies, courts must engage in a two-step analysis.  *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  "The first step requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Kohl v. United States*, 699 F.3d 935, 940 (6th  Cir. 2012).  "[T]he second step of the test requires a court to evaluate whether the conduct is of the kind that the discretionary function exception was designed to shield from liability." *Id.* "The discretionary-function exception is meant 'to prevent judicial second-guessing of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*  (citing *United States*

*v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)).

The Government argues that the Sixth Circuit "has consistently held that agency supervisory and hiring decisions fall within the discretionary function exception."  *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) (collecting cases); *see also O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009).

In *Stout v. United States*, a veteran brought an FTCA case relating to alleged sexual assaults by a VA nurse.  721 F. App'x 462, 464-65 (6th Cir. Jan. 12, 2018). The plaintiff asserted four counts (1)  negligent hiring, retention, and supervision, (2) negligence, (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.  *Id.*  As to the negligent hiring, retention and supervision claim, the *Stout* court held the FTCA's intentional tort and discretionary function exceptions barred this claim.  *Id.* at 467.

The Government acknowledges the *Stout* court permitted the plaintiff's negligence claim to proceed.  *Stout*, 721 F. App'x at 471.  The Government argues *Stout* was unlike the Plaintiff's allegations herein, which contain no assertions that any VA employee witnessed Dr. Robinson sexually assaulting the Plaintiff.  The Government complains that Plaintiff has alleged a hodgepodge of negligent hiring, training, and supervision claims against the United States, however there are no

statutes or regulations that dictate precisely how the VA hires, trains or supervises staff.  ECF No. 13, PageID.123.  As such, his claims are barred by the FTCA's discretionary function exception.

Contrary to the United States' argument, this case is sufficiently similar to *Stout* to proceed to the discovery stage.  However, to the extent Plaintiff is bringing a negligent hiring, retention or supervision claim, these allegations are subject to dismissal.  *Stout*, 721 F. App'x at 466 (citing *Satterfield v. United States*, 788 F.2d 395, 399-00 (6th Cir. 1986)).

Here, similar to *Stout*, Count II alleges a viable negligence claim involving numerous VA staff witnessing the inappropriate, impromptu, undocumented and outside of policy treatment sessions that occurred with increasing frequency with Dr. Robinson's patient. None of these employees reported this aberrant behavior or made a notation of it. If they had, it is possible Dr. Robinson's alleged abuse would have been discovered and stopped. The Amended Complaint further alleges that Plaintiff informed other VA therapists of Dr. Robinson's therapy methods, yet these VA employees also let Plaintiff down by failing to report Dr. Robinson's conduct, even though they knew such conduct amounted to professional malpractice and was detrimental to Plaintiff's mental well-being.  If these other therapists had fulfilled their professional duties, Plaintiff would have potentially been spared further injury in June of 2018 when Dr. Robinson engaged in more

abusive behavior upon encountering Plaintiff at the VA Center. Accordingly, the Court concludes Plaintiff has sufficiently alleged negligence.

### 5. Exhaustion

The Government also asserts that Plaintiff's administrative claim was not sufficiently specific with respect to his negligence claims, therefore he failed to exhaust his administrative remedies for these claims, and they must be dismissed for this additional reason.

"A prerequisite to suit under the FTCA . . . is the exhaustion by the plaintiff of administrative remedies." *Lundstrom v. Lyng*, 954 F.2d 1142, 1445 (6th Cir. 1991). The plaintiff must "give[] the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) place a value on his or her claims." *Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989).

The Government's exhaustion argument rests on out-of-circuit authority concluding that alleging only malpractice in an § 2675 administrative claim does not exhaust related claims such as negligent hiring, credentialing and supervision. *See Lopez v. United States*, 823 F.3d 970, 976-77 (10th Cir. 2016); *Staggs v. U.S. ex rel. Dep't of Health & Human Servs.*, 425 F.3d 881, 884-85 (10th Cir. 2005) (holding that administrative claim for medical malpractice did not provide jurisdiction for suit based on lack of informed consent); *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991) ("Investigation of the charge that VA

officials conspired to alter Deloria's records thus would not provide the VA with notice of Deloria's additional claims of medical malpractice and negligent supervision.").

The Court declines to adopt the reasoning of this out of circuit authority.  In any event, a review of the Plaintiff's administrative claim reveals that he put the United States on notice regarding the factual allegations comprising his negligence claims.  *See* ECF No. 13-2, PageID.137-38.  The Government's exhaustion argument is without merit.

### 6.  FTCA's Intentional Tort Exception

The Government also argues that Plaintiff's claims are explicitly barred by the FTCA which does not waive the United States sovereign immunity for the intentional torts of its employees.  *See* 28 U.S.C. § 2680(h).  The Government asserts that Count III is an intentional tort alleging medical battery and criminal sexual conduct.  The Government further contends that Counts I and II, medical malpractice and negligence, are still excepted from the FTCA's waiver of immunity because these claims are based on facts involving intentional torts.

Plaintiff counters that his allegations are not premised solely on intentional torts, he also raises claims of negligence by omission where Dr. Robinson failed to undertake certain duties required of a psychiatrist during treatment of psychological conditions.

Here, the United States acknowledges that 38 U.S.C. § 7316(f) waives the FTCA's intentional tort exception when a malpractice or negligence claim is asserted based on the conduct of a VA health care provider. Because the § 7316(f) waiver for the intentional tort exception is contingent on whether the federal healthcare worker's acts were undertaken "in the exercise of such person's duties in or for the [VA]," resolution of this issue is likewise premature. *Satterfield v. United States*, 788 F.2d 395, 400 (6th Cir. 1986). Dismissal on this basis is likewise unwarranted.

### 7. Alienation of Affection and Seduction

Finally, as to Counts II and III, the Government and Dr. Robinson agree on one thing – namely, that these claims amount to "amatory torts" akin to alienation of affection and seduction, which have been abolished in Michigan by statute. *See* MICH. COMP. LAWS § 600.2901(1), (3).

Contrary to Defendants' arguments, it appears Plaintiff is merely setting forth descriptive allegations concerning the extent of his emotional damages and injuries resulting from the Defendants' acts. The Government concedes that the Michigan Supreme Court permitted a cause of action against a psychiatrist who began a sexual relationship with a patient. *See Cotton v. Kambly*, 101 Mich. App. 537, 539; 300 N.W.2d 627 (1980).

Based on the foregoing considerations, the Court concludes that the Government's and Dr. Robinson's arguments concerning alienation of affection and seduction are without merit.

### B.  Dr. Robinson's Petition for Substitution

Dr. Robinson petitions the Court pursuant to 28 U.S.C. § 2679(d)(3) to certify that the acts alleged in Plaintiff's Amended Complaint were within the course and scope of Defendant's employment as a federal employee.  She therefore requests the Court substitute the United States as the sole party in place of Defendant Robinson and dismiss her from this action.

The Westfall Act immunizes United States employees from liability for their negligent and wrongful acts or omissions while acting within the scope of their office or employment.  28 U.S.C. § 2679(b)(1).  As such, the Westfall Act makes suit against the United States the sole remedy for a government employee's misconduct done in the course and scope of her employment. *Id*.; *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (the Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.").

However, similar to the circumstances in this case, the Attorney General can decline to certify an employee was acting within the scope of employment, and the

employee may seek judicial certification that the employee was acting within the scope of her employment.  28 U.S.C. § 2679(d)(3).

Based on the conclusions reached in Section III, subpart A, subsection 2, *supra*, the Court will deny without prejudice Dr. Robinson's Petition for Substitution and Representation. It is necessary that the parties be given an opportunity to conduct discovery and develop the factual record to resolve whether Dr. Robinson was acting within the scope of her employment during the events giving rise to this action.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, the Defendant United States of America's Motion to Dismiss [#13] is DENIED.

Defendant Dr. Jennifer Robinson's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)[#18] is DENIED.

Defendant Jennifer Robinson's Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3) [#19] is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: August 10, 2020                    s/Gershwin A. Drain_____
                                          GERSHWIN A. DRAIN
                                          UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 10, 2020, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager