UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREY CHOLEWA,

Plaintiff,

v.

UNITED STATES OF AMERICA and
JENNIFER ROBINSON, M.D.,

Defendants.

_____/

Case No. 19-cv-12190

U.S. District Court Judge
Gershwin A. Drain

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 56) AND DENYING DEFENDANT ROBINSON'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 57)

### I.   INTRODUCTION

Plaintiff Sergeant Trey Cholewa filed the instant Federal Tort Claims Act ("FTCA") action against Defendants United States of America ("United States" or "Government") and Jennifer Robinson, M.D. ("Robinson") ECF No. 9.  He alleges Defendant Robinson failed to provide him proper care and sexually harassed him while serving as his psychiatrist at the John D. Dingell VA Medical Center ("VA Center" or "VA") in Detroit, Michigan.  *Id.*

1

Presently before the Court are Defendant United States' Motion for Summary Judgment (ECF No. 56) and Defendant Robinson's Motion for Summary Judgment (ECF No. 57). The matters are fully briefed, and a hearing was held on January 14, 2022. For the following reasons, the Court will **GRANT IN PART AND DENY IN PART** Defendant United States' Motion for Summary Judgment (ECF No. 56) and **DENY** Defendant Robinson's Motion for Summary Judgment (ECF No. 57).

## II.    BACKGROUND

### A. Factual Background

Plaintiff is a veteran of the United States Marine Corps. ECF No. 56-2, PageID.670. He served five tours as a machine gunner and eventually reached the rank of sergeant. *Id.* at PageID.1391, PageID.1392. Plaintiff was medically discharged in May 2015. *Id.* at PageID.1397, PageID.1445. The VA determined he is 100% disabled and diagnosed him with sleep apnea, post-traumatic stress disorder ("PTSD"), migraines, and various physical problems with his back, eye, ankle, wrist, etc. ECF No. 56-3, PageID.816. The Social Security Administration found Plaintiff is similarly impaired. ECF No. 56-4. Nevertheless, upon his return, "[h]e plan[ned] on being a full-time father now as his wife works" and wanted "to use his GI bill to go back to college." ECF No. 63-4, PageID.2637.

2

After returning to Michigan, Plaintiff began receiving mental health treatment at the Detroit VA Center in June 2015.  In September of that year, he began treating with Defendant Robinson, a psychiatrist at the VA Center.  ECF No. 57-2, PageID.1450.  Robinson's progress notes document 21 therapy sessions between herself and Plaintiff between September 2015 and June 2018.  *See* ECF No. 57-17.  However, the VA Center later determined she did not document all their sessions. ECF No. 56-9, PageID.1086.

Plaintiff testified Robinson began making amorous comments to him during their first session, ECF No. 57-2, PageID.1451, and escalated to massaging, kissing, and fondling him, *id.* at PageID.1484.  He testified the sexual contact happened from March 2017 to August 2017, *id.* at PageID.1488, and occurred more than ten but less than twenty times, *id.* at PageID.1485.  He further testified he and Robinson never had full sexual intercourse, *id.*, because they were usually interrupted, but she invited him to accompany her to a conference in Boston so they could "be alone," *id.* at 1478-79.  However, Plaintiff did not go on this trip.  *Id.* at PageID.1479.

Additionally, Plaintiff testified Robinson encouraged him to leave his wife. *See, e.g.*, *id.* at PageID.1468-69, PageID.1474.  While Plaintiff testified Robinson did not tell him she was thinking of leaving her husband, he did testify she told him she was moving closer to where he lived and hoped to run into him outside the VA

3

Center.  *Id.* at PageID.1476.  Plaintiff ultimately filed for divorce in January 2018, and his wife countersued for divorce in April 2018.  ECF No. 56-17.  The divorce was finalized in October 2018.  *Id*.  Plaintiff admits he was having an affair with a woman other than Robinson leading up to the divorce.  ECF No. 57-2, PageID.1440-41.  However, he and his ex-wife had reconciled and gotten engaged again by the time Ms. Cholewa was deposed.  ECF No. 56-15, PageID.1182-83.

Plaintiff did not report Robinson's alleged misconduct to anyone at the VA Center while it was ongoing.  ECF No. 57-2, PageID.1486.  He also testified Robinson actively attempted to hide her misconduct by placing her trashcan outside her office so the janitor would not interrupt them and having Plaintiff come straight to her office for his appointments without checking in at the front desk.  *Id.* at PageID.1479-80.

Plaintiff stopped treating regularly with Robinson on August 22, 2017.  ECF No. 57-17, PageID.1662.  He returned to the VA Center on June 13, 2018 after unsuccessfully attempting to see a provider in the community.  *Id*.  That day, Plaintiff reported that he had been off his medication for a few months and his symptoms had "worsened severely," but that he had seen slight improvement after restarting his old medications.  *Id*.  This was his last recorded session with Robinson.  *See* ECF No.

4

57-17.   Plaintiff declined any follow-up appointments at the VA Center and requested a referral to a community provider.  *Id.* at PageID.1663.

On June 19, 2018, Plaintiff began treating with Karen Brickner, M.A., a limited license psychologist at United Psychological Services ("UPS").  ECF No. 56-5, PageID.839.   During his first session, he spoke about being "sexually harassed" by Robinson.  ECF No. 63-10, PageID.2834.   Plaintiff treated with Brickner at UPS until October 2018 but stopped showing up for reasons unknown to Brickner.  ECF No. 56-6, PageID.850, PageID.852.   Plaintiff restarted therapy with Brickner in December 2020 and was still going at the time the instant Motions were filed.   *Id.* at PageID.850.   He also underwent psychological and neuropsychological evaluation with Dr. Nida Hamid and discussed his experiences with Robinson with her.  *See, e.g.*, ECF No. 63-5, PageID.2646-47.

On November 12, 2018, Plaintiff submitted a letter ("Notice of Intent") to the VA alleging Robinson "made several inappropriate sexual advances and comments toward him" and initiated sexual contact during his therapy appointments.  ECF No. 56-9, PageID.1085.   Subsequently, on November 19, 2018, Plaintiff filed an administrative tort claim with the same allegations.  ECF No. 56-8, PageID.1078. In response, the VA Center conducted an administrative factfinding, which was carried out by Nicole Stromberg, M.D., Associate Chief of Staff-Mental Health.  *See*

5

ECF No. 56-9.  Dr. Stromberg did not find concrete evidence to support Plaintiff's allegations.  *Id.* at PageID.1090-91.  However, she found Robinson's call volume with Patient concerning because Robinson had three times as many calls with Plaintiff as her next most contacted patient, she initiated 74% of the calls, and none of the calls were documented.  *Id.*  Dr. Stromberg was similarly concerned by Robinson's pattern of not documenting every treatment session and unwillingness to share even redacted personal phone records concerning.  *Id.*  Dr. Stromberg ultimately recommended Robinson "be relieved of all patient care duties."  *Id.* at PageID.1091.

The VA Professional Standards Board did not adopt this recommendation and instead gave Robinson a written reprimand, placed her on "focused professional practice evaluation," and prohibited her from seeing outpatient veterans.  ECF No. 56-10, PageID.1101-03;  ECF No. 56-11;  PageID.1107, ECF No. 56-7, PageID.1028-29.  Robinson successfully completed this probationary period.  *Id.* at PageID.1028.

However, during this litigation, Plaintiff produced audio and video recordings of himself and Dr. Robinson in her office.  In one recording, Plaintiff refers to Robinson massaging and kissing him, and Robinson says she thinks she is in love with him.  ECF No. 63-8, PageID.2818.  After the Professional Standards Board

6

reviewed these recordings and Robinson's deposition transcript, the VA summarily suspended and later revoked Robinson's clinical privileges.  ECF No. 56-13.

### B. Procedural Background

Plaintiff initiated this action on July 25, 2019, bringing claims for medical malpractice, negligence, and medical battery.  ECF No. 1.  The initial Complaint only named the United States as a defendant, but Robinson was added in the Amended Complaint filed on November 25, 2019.  *See* ECF No. 9.

Both Defendants moved to dismiss (ECF Nos. 13, 18), which the Court denied.  ECF No. 31.  Specifically, the Court held, *inter alia*, (1) "resolution of whether Dr. Robinson was acting within the scope of her employment requires a full factual record on the details of her therapy," *id.* at PageID.461; (2) any negligent hiring, retention, or supervision claims are subject to dismissal, but Plaintiff's claims are not otherwise barred by the FTCA's discretionary function exception, *id.* at PageID.465-66; and (3) dismissal under the FTCA's intentional tort exception was premature while the question of whether Robinson acted within the scope of her employment was unsettled¸ *id.* at PageID.468.

Now, both Defendants move for summary judgment on similar grounds.

7

### III.   LAW & ANALYSIS

## A. Legal Standard

### 1. Summary Judgement

"Summary judgment is appropriate when there is 'no genuine dispute as to any material fact' and the moving party 'is entitled to judgment as a matter of law." *F.P. Dev., LLC v. Charter Twp. of Canton, Michigan*, 16 F.4th 198, 203 (6th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).  "A fact is material if its resolution will affect the outcome of the lawsuit." *Id.*  The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To support their arguments for or against summary judgment, parties may "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  They may also "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

8

Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52; *see also Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[The] general rule [is] that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks omitted).

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 491 (6th Cir. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Thus, if the nonmoving party will bear the burden of proof on a claim, the movant "need only demonstrate that the nonmoving party has failed to 'make a showing sufficient to establish the existence of an essential element' of that claim." *Id.* (quoting *Celotex*, 477 U.S. at 322). "[T]o survive a summary-judgment motion, a plaintiff subject to a preponderance-of-the-evidence burden must present enough evidence to allow a reasonable juror to conclude that the [plaintiff's] position *more likely than not* is true." *Id.* (internal quotation marks omitted) (emphasis and alteration in original).

9

### 2.  Medical Malpractice

To establish a claim of medical malpractice in Michigan, a plaintiff must set forth: "(1) the appropriate standard of care governing the defendant's conduct at the time of the purported negligence, (2) that the defendant breached that standard of care, (3) that the plaintiff was injured, and (4) that the plaintiff's injuries were the proximate result of the defendant's breach of the applicable standard of care." *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86 (2004) (footnote omitted); *see also* MICH. COMP. LAWS § 600.2912a.  "Generally, expert testimony is required in medical malpractice cases," though the Michigan Supreme Court has recognized exceptions to this requirement.  *Woodard v. Custer*, 473 Mich. 1, 6 (2005).

### B.  Discussion

#### 1.  United States' Motion for Summary Judgment

##### i.  Plaintiff's Psychiatric Expert Reports are Sufficient for the Summary Judgment Stage.

Defendant United States initially argued Plaintiff's medical malpractice claims were subject to dismissal because he had not, at the time the Government filed its Motion for Summary Judgment on April 16, 2021, produced an expert report from a board-certified psychiatrist.  ECF No. 56, PageID.638-40.  Plaintiff countered that, at the time the United States filed its Motion, trial was set for August 3, 2021, so his expert reports were not due until May 5, 2021 pursuant to Federal Rule of

10

Civil Procedure 26(a)(2)(D)(i).  ECF No. 63, PageID.2395.  On May 3, 2021, Plaintiff sent Defense counsel expert reports from Sara West, M.D. and Larry Kirstein, M.D., both of whom are board-certified psychiatrists.  *Id*.  In its Reply, the Government now asserts these reports are nevertheless deficient because they do not establish the relevant standard of care regarding Plaintiff's medical malpractice claims beyond sexual harassment.  ECF No. 67, PageID.4396-97.  Specifically, the Government argues they are missing opinions regarding whether Robinson improperly managed Plaintiff's medication and failed to timely obtain referrals *Id.* at PageID.4396.  Moreover, according the United States, they do not demonstrate how failing to document treatment sessions caused Plaintiff damage.  *Id*.

As an initial matter, the Court notes that, due to various delays caused by the COVID-19 pandemic, the hearing on this Motion happened five months after the trial in this case was initially scheduled, and there is not currently a trial date set. Accordingly, Plaintiff could potentially still submit additional expert reports in compliance with Rule 26(a)(2)(D)(i), and the Government's argument is still premature.  Nevertheless, the Court will address the parties' arguments because the trial was not moved until after the Motion had been fully briefed.

The Court disagrees with the Government's hair-splitting of the standard of care owed to Plaintiff and subsequent assessment of the reports.  Through the

11

Affidavit of Merit attached to his Complaint and Amended Complaint, Plaintiff alleges there is a standard of care for psychiatric professionals[1] working with patients "like and similar" to Plaintiff, and that standard of care includes various duties such as, *inter alia*, obtaining an accurate and pertinent history, obtaining necessary referrals in a timely manner, and properly documenting patient sessions and therapeutic measures.  ECF No. 9, PageID.87.  Specifically, it states

> A reasonable and prudent physician or other health care professional specializing in psychiatry and providing evaluation, consultation, care and/or treatment for a patient like and similar to Trey Cholewa owed a duty, pursuant to the applicable standards of care to:
>     1. obtain an accurate and pertinent history;
>     2. obtain necessary referrals in a timely manner, when indicated;
>     3. properly document patient sessions and therapeutic measures considered and employed;
>     4. refrain from initiating or encouraging physical touching of a sexual nature with a patient;
>     5. refrain from initiating or encouraging sexual encounters with a patient; and
>     6. discontinue the professional, therapeutic physician-patient relationship if experiencing romantic, emotional or sexual attraction to a patient.

---

[1] Because Plaintiff sued the United States on a vicarious liability theory, the Government is subject to the same standard of care as Robinson.  *Nippa v. Botsford Gen. Hosp.*, 257 Mich. App. 387, 391 (2003) ("[W]e hold that the standard of care applicable to the hospital is the same standard of care that is applicable to the physicians named in the complaint.").

*Id*.

In his Rule 26(a) report, Dr. Kirstein stated Defendant Robinson "deviated from the acceptable standard of care in treatment of T.C. in 2017" and that these deviations included, *inter alia*, excessive phone calls and omitting seven office visits from her progress notes.  ECF No. 64-13, PageID.3934.  Dr. Kirstein further opined that "[t]o the extent that Dr. Robinson's therapy in 2016-2018 involved hugging, massages and flattery, her treatment deviated from acceptable standards of care by a psychiatrist."  *Id.* at PageID.3935.  Similarly, Dr. West stated Defendant "Robinson's conduct during her psychiatric treatment of Mr. Cholewa represents a significant deviation from the standard of care."  ECF No. 64-14, PageID.3959.  As an example, Dr. West opined, "[I]t is impossible to determine if the reasoning for the doctor's therapeutic recommendations flow from personal interest rather than professional judgment, e.g., recommending a married patient divorce his wife."  *Id*.  Both experts expressed concern with the extent Robinson reviewed Plaintiff's pertinent medical history.  *See id.* at PageID.3960; ECF No. 64-13, PageID.3938.

While the experts did not address each of the non-sexual aspects of the duties alleged in Patient's proposed standard of care, they have clearly articulated a standard of care that includes more than just sexual misconduct.  Accordingly, the Court finds the expert reports have sufficiently addressed the relevant standard of

care for this stage of the case. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[The] general rule [is] that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks omitted).

Defendant's causation argument is equally unavailing. In Michigan, "expert testimony is required to establish causation in an action for medical malpractice." *Teal v. Prasad*, 283 Mich. App. 384, 394 (2009). It cannot be "based upon only hypothetical situations." *Id.* (quoting *Skinner v. Square D Co.*, 445 Mich. 153, 173 (1994)). Instead, "'there must be facts in evidence to support the opinion testimony of an expert.'" *Id.* (quoting *Skinner*, 445 Mich. at 173) (alteration omitted).

Both experts explicitly, and extensively, addressed causation in their Rule 26 reports. For example, Dr. Kirstein opined:

> It is my opinion based upon review of the depositions and United Psychological Service records that T.C. suffered exacerbation of his underlying PTSD and anxiety disorders due to the misconduct of Defendants V.A. Hospital and Dr. Jennifer Robinson.
>
> 10. It is my further opinion to a reasonable degree of medical certainty that, as a direct result of Dr. Robinson's failure to provide acceptable and therapeutic care to T.C., he has suffered increased symptoms including, but not necessarily limited to, distrust and uncertainty. Understandably, T.C. no longer feels safe using the V.A. mental health system for his care. Karen Brickner, his current therapist described in her deposition that T. C appeared uncomfortable and not at ease with her . . . .

14

> 12. It is my further opinion that T.C. has suffered conscious pain and suffering as a consequence of the treatment of Dr. Robinson at the V.A. Hospital. To a reasonable degree ·of medical certainty, T.C. will continue to suffer from these damages for the rest of his life. T .C. has not and will not be able to enjoy and promote the type of close relationship with people in general, and with his children and family specifically, that he had hope for when initiating treatment with Dr. Robinson at the V.A. Hospital. I also believe that it is more likely than not that T.C.'s ongoing psychological damages will interfere with his ability to maintain sustained employment, which will impact his ability to provide financial and parental support, and household services; to his family, past and future.

ECF No. 64-13, PageID.3935-36.  Dr. Kirstein's opinion was undoubtedly grounded in fact and not "based upon only hypothetical situations."  *Teal*, 283 Mich. App. at 394.  He spends about three pages detailing all the pieces of evidence on which he relied to reach his conclusions.  ECF No. 64-13, PageID.3937-39.  Dr. West similarly opined, "Dr. Robinson's misconduct exacerbated [Plaintiff's] underlying conditions, doing further damage to Mr. Cholewa."  ECF No. 64-14, PageID.3961.  She further theorized Plaintiff "more likely than not" would "be unable to return to the psychological and emotional baseline condition as when he first presented to Veterans Administration and Dr. Robinson's psychiatric care in 2015."  *Id*.  Accordingly, the Court also finds the expert reports have sufficiently addressed causation for this stage of the litigation.

15

## ii.   There is a Genuine Dispute Whether Robinson Was Acting Within the Scope of Her Employment.

Defendant United States renews its legal argument from its Motion to Dismiss that the FTCA bars Plaintiff's claims because Robinson was acting outside of the scope of her employment.  ECF No. 56, PageID.640-49.  In her opposition to the Motion, Defendant Robinson responds, "[T]he United States merely rehashes old arguments, relying on the same cases <u>already</u> distinguished by this Court as inapposite."  ECF No. 62, PageID.2356-57 (emphasis in original).   Similarly, Plaintiff responds that, because the United States' contention is not based on the newly developed record, it is "little more than a motion for reconsideration in which Defendant assert that this Court previously relied on improper authority."  ECF No. 63, PageID.2396.  In reply, the United States again avers Robinson's conduct was outside the scope of her employment pursuant to *Stout v. United States*, 721 Fed. App'x 462 (6th Cir. 2018) and *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008).[2]  ECF No. 67, PageID.4393-94.

---

[2] The Government focused its arguments on the allegations regarding the improper romantic and/or sexual relationship, as opposed to the other ways in which Plaintiff alleges Robinson breached the standard of care claims (e.g., that Defendant Robinson failed to properly obtain a patient history, document Plaintiff's care, or provide medically necessary referrals).   At the hearing on the Motion, the

16

The Court spent considerable time in its August 10, 2020 opinion addressing most of the cases the United States cites—and their inapplicability to the present situation—and it will not repeat that analysis again here. *See* ECF No. 31, PageID.454-60, PageID.464-66. Indeed, the Court devoted considerable energy to distinguishing the instant case from *Scottsdale*, *id.* at PageID.457-58, and analogizing it to *Stout*, *id.* at PageID.464-66. To the extent the United States disagreed with the Court's reasoning, such objections should have been raised in a motion for reconsideration pursuant to E.D. Mich. LR 7.1(h).

There are two cases the Government cites the Court did not extensively address in its last Opinion, so it will do so now. The United States reframes an old argument and asserts, "the Michigan Supreme Court has provided clear rules for determining when an exception might exist to the general rule of employer non-liability for the criminal acts of an employee." ECF No. 56, PageID.645. Specifically, the plaintiff must show "an employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the

---

Government conceded the other allegations fall within the scope of Robinson's employment as a psychiatrist at the VA.

17

employee's propensity to act in accordance with that conduct." *Id.* (citing *Hamed v. Wayne Cty.*, 490 Mich. 1, 12 (2011)).

Defendant cites *Brown v. Brown*, 478 Mich. 545 (2007) and *Hamed* in support of its proposition that the test applies here. ECF No. 56, PageID.645. However, as with the other cases on which the Government relies, these are outside the psychotherapy context and thus inapposite. *Brown* concerned a security guard raped by a client's employee, and the Michigan Supreme Court held the defendant-client was not liable for this criminal action because it was not foreseeable. 478 Mich. 545, 554-55 (2007). Similarly, *Hamed* concerned a detainee sexually assaulted by a sheriff's deputy and subsequent quid pro quo sexual harassment, and the Michigan Supreme Court held the sexual assault was outside the scope of a sheriff deputy's employment. 490 Mich. 1, 11-12 (2011). These cases do not address several issues present here, including that Plaintiff alleges, and testified regarding, a doctor-patient relationship through which he was subjected to years of sexual misconduct under the guise of necessary treatment. Again, the Court finds "the Government's reliance on Michigan case law involving sexual assault occurring outside of the mental health treatment context is misplaced and unhelpful to resolving whether Dr. Robinson was working within the scope of her employment." ECF No. 31, PageID.458

18

To the extent the United States argues Plaintiff has insufficiently demonstrated "that any VA employee witnessed Dr. Robinson's alleged abuse of Plaintiff," ECF No. 56, PageID.643, the Court finds a genuine dispute of material fact exists as to whether other VA employees were aware of Robinson's misconduct. During his deposition, when asked if he could return to the VA in the future and if other employees treated him poorly, Plaintiff testified:

> When I used to -- when she used to call me and tell me to go there and just check in with the desk on random days where I didn't have an appointment, I felt like the VA should have known that. They should have known at that point because I'm starting to go there quite a bit at the desk, and the office or the desk people it was becoming so often that they were saying, "Well, you don't have an appointment today," and then every time they said that I had to say, "Well, Dr. Robinson said I can still come. Dr. Robinson said I could still come." Then it got to the point where I felt like they knew me, and they would say, "Oh, you're that special one. You're the one that has that special treatment," and they would still allow me to go back there. . . .

ECF No. 56-2, PageID.774-75. He continued:

> I felt like there was colleagues on more than one occasion that I felt like could have heard something. I mean she literally was -- you can call people a b[****] as loud as you can. I don't know. I guess they could think that's me as well, but I feel like there was too many times that someone could have figured something out.

*Id.* at PageID.775. Robinson corroborated Plaintiff's suspicions about others being able to hear their sessions in one of the recordings he made of their interactions.

19

ECF No. 63-9, PageID.2828 ("FEMALE: Why do you got to talk so loud? MALE: Why do you got to whisper? FEMALE: Because I can hear his section [*sic*], so I know he can hear mine.").

In contrast, Dr. Stromberg, Robinson's supervisor, testified no one at the VA was aware of the misconduct until Plaintiff filed his Notice of Intent.  ECF No. 56-7, PageID.939 ("During the investigation we did, I mean, when I got the complaint. Until then, until the complaint, none of this was -- nobody knew about any of this, no.").  Her findings from the factfinding also state none of the people she interviewed were aware of the relationship. ECF No. 56-9, PageID.1088.  However, the report submitted to the Court does not indicate who she interviewed, how many employees were interviewed, or if former employees were included.  *See generally* ECF No.56-9.  The Court thus acknowledges it is possible employees who were not interviewed might have known.  *See Anderson*, 477 U.S. at 255.  ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.")  Accordingly, the Court finds "the evidence presents a sufficient disagreement to require submission to a jury."  *Id.* at 251–52.

Finally, Defendant argues Robinson was acting outside the scope of her employment because she invited Plaintiff to accompany her on a trip to Boston, encouraged him to leave his wife, told him she loved him, and engaged in sexual

20

activity with him.  ECF No. 56, PageID.649.  Plaintiff and Defendant Robinson—who does not concede any romantic or sexual impropriety occurred—counter that Robinson, as a psychological professional, was supposed to maintain a healthy physical and emotional distance while treating Plaintiff.  They argue she mishandled the psychological phenomenon of transference and thus mismanaged her therapeutic relationship with Plaintiff.  *See, e.g.*, ECF No. 63, PageID.2383; ECF No. 62, PageID.2360-61.  Further, they contend Robinson maintained this therapeutic relationship, however mismanaged, in service of her employer.  *Id.*; ECF No. 63, PageID.399-2400.

The Court is well aware the parties fundamentally disagree over the legal question of whether a mental health professional can act in the scope of her employment while pursuing a romantic or sexual relationship with her patient. As discussed in greater detail in Section III.B.2.i. *infra*, Defendant Robinson claims there is insufficient evidence that Plaintiff and Robinson were involved in a romantic or sexual relationship.  ECF No. 57, PageID.1355-63.  These facts are indisputably material to the litigation, and there is a genuine dispute over whether they occurred. *See F.P. Dev.*, 16 F.4th at 203 ("A fact is material if its resolution will affect the outcome of the lawsuit.").

21

Accordingly, for all the reasons discussed *supra*, the Court holds there is a genuine dispute whether Robinson was acting within the scope of her employment, and the United States is not entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  As such, the Court holds Plaintiff's claims are not barred by the FTCA at this time.

### iii.    The FTCA Intentional Tort Exception Does Not Apply.

Defendant United States also renews its argument that the FTCA's intentional tort exception bars Plaintiff's claims.  ECF No. 56, PageID.649-50.  Specifically, the Government avers 28 U.S.C. § 2680(h) bars claims arising out of assault or battery.  *Id.* at PageID.649 (citing *United States v. Shearer*, 473 U.S. 52, 55 (1985)).  It further contends the VA Immunity Statute (38 U.S.C. § 7316(f))—which otherwise removes medical malpractice claims from § 2680(h)'s protection—does not apply to actions taken outside of the scope of employment.  *Id.* at PageID.650-51 (citing *Franklin v. United States*, 992 F.2d 1492, 1502 (10th Cir. 1993)).  Plaintiff counters that the Government disregards the far more recent case, *Levin v. United States*, 568 U.S. 503 (2013), in which the Supreme Court held a statute "functionally indistinguishable" from 38 U.S.C. § 7316(f) "abrogates the FTCA's intentional tort exception and therefore permits [plaintiff's] suit against the United States alleging medical battery by a Navy doctor acting within the scope of his employment."  ECF

22

No. 63, PageID.2402 (quoting *Levin*, 568 U.S. 503, 518 (2013)).   In reply, the Government reasserts Robinson was not acting within the scope of her employment, so "38 U.S.C. § 7316(f) does not waive the FTCA's intentional tort exception, and Plaintiff's FTCA claims are barred."  ECF No. 67, PageID.4398.

The Court held *supra* there is a genuine dispute of material fact as to whether Robinson's sexual misconduct was within the scope of her employment. Additionally, the Government has not alleged, and cannot in good faith allege, that Plaintiff's non-sexual medical negligence claims (e.g., failing to take a proper patient history, failing to properly chart and document treatment, and failing to make appropriate referrals) are outside the scope of her employment as psychiatrist with the VA.  Accordingly, Defendant United States' argument fails, and the Court holds Plaintiff's claims are not barred by the FTCA's intentional tort exception at this time.

### iv.   The Negligent Hiring, Retention, and Supervision Claims are Dismissed, but the Other Negligence Claim within Count II Remains.

Finally, referring to the Court's August 10, 2020 Opinion, Defendant United States requests the Court summarily dismiss Plaintiff's negligent hiring, retention, and supervision claims under the FTCA's discretionary function exception.  ECF No. 56, PageID.651 (citing ECF No. 31, PageID.465).  Plaintiff concedes to the dismissal but asserts the Court also noted, "Count II alleges a viable negligence

23

claim involving numerous VA staff witnessing the inappropriate, impromptu, undocumented and outside of policy treatment sessions that occurred with increasing frequency with Dr. Robinson's patient."  ECF No. 63, PageID.2404 (quoting ECF No. 31, PageID.465).  Moreover, "Defendant's current motion makes no argument regarding those claims."  *Id*.

Plaintiff is correct that the Government did not specifically move for summary dismissal of the ordinary negligence claims regarding the VA employees, although it did make related arguments when asserting the VA should not be responsible for Robinson's conduct because the staff were unaware it was happening.  To the extent those arguments preserve the issue, the Court already held there is a genuine dispute over the VA employees' knowledge, so the viable negligence claim within Count II survives.

### 2.  Dr. Robinson's Motion for Summary Judgment

#### i.   Plaintiff Has Successfully Made a *Prima Facie* Claim for Medical Malpractice (Count I).

Defendant Robinson argues Plaintiff's medical malpractice claim fails because Plaintiff has not made a *prima facie* case she breached the standard of care.  ECF No. 57, PageID.1353-54.  Specifically, she contends there "must be facts in evidence to support the opinion testimony of an expert."  *Id.* at PageID.1354 (quoting *Skinner*, 445 Mich. at 173).

24

### a. Plaintiff has made a *prima facie* case Dr. Robinson breached the standard of care.

Robinson asserts the six duties Dr. Kirstein opined that she breached in the Affidavit of Merit attached to Plaintiff's Amended Complaint are not supported by record evidence. ECF No. 57, PageID.1354 (citing ECF. No. 9, PageID.86-91). For the following reasons as well as those discussed in Section III.B.1.i. *supra*, the Court disagrees.

First, Robinson points to the notes from her first visit, in which she wrote "psychiatric history and current clinical status were reviewed" and referred to the intake assessment Plaintiff underwent to receive treatment through the VA Center. *Id.* (citing ECF No. 57-17, PageID.1749). The Court does not find this example persuasive. The breached duties in Dr. Kirstein's Affidavit of Merit encompass years of treatment; that Robinson is able to demonstrate a discrete instance in which she complied with the standard of care does not mean she did not otherwise breach it during that time. This is further evidenced by the fact that it appears each progress note begins with the same paragraph regardless of whether the rest of the note discusses any review of records. *See generally* ECF No. 57-17 ("The patient was seen today. The psychiatric history and current clinical status were reviewed. The patient was provided psych-education and supportive therapy. The encounter lasted 30 minutes. More than half of the time spent on psychotherapy."). Additionally, as

25

stated *supra*, both Dr. Kirstein and Dr. West observed Robinson seemed to have overlooked an integral part of Plaintiff's medical history because it was not mentioned anywhere within her file. ECF No. 64-13, PageID.3938; ECF No. 64-14, PageID.3960.   Thus, Plaintiff's has made his *prima facie* case that Robinson breached the standard of care by failing to obtain an accurate and pertinent history.

Second, Robinson emphasizes that she referred Plaintiff to both a VA PTSD clinic and an outside psychotherapist on at least four separate occasions, and Plaintiff refused to follow through with the referrals. ECF No. 57, PageID.1355 (citing ECF No. 57-17, PageID.1691, PageID.1707, PageID.1737; ECF No. 57-18).  The Court finds this more persuasive but still concludes there is genuine a dispute of material fact regarding whether Robinson breached the standard of care by failing to make timely referrals.  The record evidence to which she cites indicates nothing about the timeliness of her referrals or whether her response to a recalcitrant patient is considered reasonable in her field.  It is thus insufficient to overcome the opinion of Plaintiff's expert.  Nor has Robinson provided her own expert to support her actions. Thus, Plaintiff has made a *prima facie* showing that Robinson breached a standard of care by failing to make timely referrals.

Third, Robinson argues extensively that Plaintiff has not met his *prima facie* burden to show she breached a standard of care by carrying on a sexual or romantic

26

relationship with him. ECF No. 57, PageID.1355- 63. Specifically, Robinson argues Plaintiff's allegation is unsupported by his medical record and was raised for the first time in his Notice of Intent. *Id.* at PageID.1356. Robinson posits Plaintiff "bec[a]me angry with Robinson and the VA, ultimately blaming her for his ongoing mental health issues, his decision to divorce his wife, and for making him feel 'powerless' during their sessions." *Id.* She goes on to suggest Plaintiff is either delusional or made everything up. *Id.* at PageID.1357. Moreover, Robinson avers Plaintiff does not have independent evidence of Robinson sexually touching him. *Id.* at PageID.1357-59. Finally, Robinson asserts Plaintiff's story has been inconsistent over time, particularly with respect to the date of his last therapy appointment and an interaction with Robinson in June 2018. *Id.* at PageID.1361.

Defendant relies on *Shine v. United States*, No. 12-14099, 2014 WL 4864516, at *13 (E.D. Mich. Sept. 30, 2014), *aff'd* (July 2, 2015) to argue the Court should find Plaintiff failed to raise a genuine issue of material fact as to whether he had a sexual relationship with Robinson. ECF No. 57, PageID.1363. In *Shine*, the court found the plaintiff's

> deposition testimony is not consistent with his prior statements. Indeed, as explained in detail above, Shine's version of the events has varied wildly over time and is itself inconsistent. There is no medical evidence to support his allegations. To meet his summary judgment burden, Shine relies on his deposition testimony, which varies from his

27

> other statements made about the incident.   He has no other
> corroborating evidence.

*Id*.  The court thus held the deposition testimony was insufficient to survive a motion

for summary judgment "[u]nder the circumstances."  *Id*.

No genuine issue of material fact exists where the record "taken as a whole

could not lead a rational trier of fact to find for the non-moving party."  *Matsushita*

*Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record,

so that no reasonable jury could believe it, a court should not adopt that version of

the facts for the purposes of ruling on a motion for summary judgment."  *Scott v.*

*Harris*, 550 U.S. 372, 380 (2007).

Contrary to Robinson's assertions, those circumstances do not exist here, and

several parts of the record corroborate Plaintiff's deposition testimony.  First, it is

notable that after examining him, Plaintiff's medical professionals (Dr. Kirstein, Dr.

West, Dr. Hamid and Brickner, MA) did not dispute his allegation of an improper

sexual relationship.  This was not the case in *Shine*, where the court found there was

no evidence of the alleged harm caused by the alleged incident.  *Shine*, 2014 WL

4864516, at *13.  Specifically,

> [t]here is no evidence of PTSD or a stutter caused by the alleged
> incident.  Doctors Gaulier, Day, Howell, Putnam, Clark, and Benedek

28

found neither. Dr. Howell has opined that Plaintiff did not have PTSD or a stutter, and that his exaggerated descriptions of symptoms were likely due to a motivation for "secondary gain"—i.e. damages in this lawsuit—or the patient's attempt to distract the psychologist from his personality disorder."

*Id.*

In contrast, the doctors in this case agree Plaintiff was subjected to an improper relationship with Robinson.  For example, in his Rule 26 report, Dr. Kirstein stated

It is my further opinion, to a reasonable degree of medical certainty, that the complaint alleged by T.C. that during their office sessions in 2016 through 2018, Dr. Robinson used flattery and then massages and hugs in her interactions with T.C, is true. The basis for this conclusion is that the sequence of events described in opinion # 1 could not occur without some grooming and preparation.

ECF No. 64-13, PageID.3935.  Defendant has not provided any contrary medical professionals or other evidence to refute these opinions.

Second, the VA investigation that occurred after Plaintiff filed his Notice of Intent resulted in the following recommendation:

At this point, the nature of allegations, our inability to rule out undocumented patient contact on the dates provided in the Complaint, the excessive telephone calls with the patient (undocumented in the medical record), and Dr. Robinson's refusal to share her personal telephone records or even state whether or not she spoke or texted with the patient vis personal cell phone during the relevant time period all

29

combine to leave me with no option other than to recommend that Dr. Robinson be relieved of all patient care duties.

Her refusal to produce redacted cell phone records or even answer questions regarding communications with the patient using her personal telephone creates a founded suspicion that the records harbor information suggestive of an improper relationship. Under these circumstances, I have no choice but to recommend that she not be permitted further patient contact.

ECF No. 56-9, PageID.1091.

While this determination is in no way binding on this Court, the Court is persuaded that the VA Center found there was a "genuine dispute" whether the improper relationship occurred. The Court further notes Robinson has not provided any additional evidence to rebut Plaintiff's claims in the intervening period. Indeed, she has continued not providing information when she is able to and invoked her Fifth Amendment right against self-incrimination to the extent her answers during her deposition related to Plaintiff. ECF No. 64-7, PageID.3795. "[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause." *Phillips v. Deihm*, 213 Mich. App. 389, 400 (1995) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

30

Third, the audio recordings Plaintiff made clearly point to romantic and/or sexual relationship between him and Robinson.  During one interaction Robinson expresses her love for Plaintiff and he refers to the inappropriate sexual touching.

> MALE: Maybe I should. I should probably go see someone else. You can -- we're going to talk like that. I feel like -- I don't know. Seriously, I think you're fucking with my head.
> FEMALE: I'm not trying to --
> MALE: You come over here and give me a massage and kiss me and --
> FEMALE: (Inaudible).
> MALE: Because why?
> FEMALE: Because I think I happen to be in love with you. That might have something to do with it.
> MALE: Say that? You might be what?
> FEMALE: I don't know. I don't know.
> MALE: Say it again then.
> FEMALE: No, no. You know what I said.
> MALE: You might be in love with me?
> FEMALE: I might be.
> MALE: You might be?
> FEMALE: Yes. okay? So just –

ECF No. 63-8, PageID.2818.  Plaintiff later continues:

> And then I come here and I feel happy because, of course, I don't know, I can look at you, and you smile and give me a massage and kiss me and play with my penis or whatever, but -- it's not a joke.
> 10 It makes me feel amazing. And then I leave here and then I'm right back to feeling like a miserable person.

*Id.* at PageID.2821.

31

Thus, the Court concludes there is evidence to corroborate Plaintiff's deposition. *Cf. Shine*, 2014 WL 4864516, at *13. As such, the Court will not make credibility determinations about Plaintiff's testimony at this time. *Tolan*, 572 U.S. at 656 ("[The] general rule [is] that a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Not only is Plaintiff's position not "blatantly contradicted by the record," *Scott*, 550 U.S. at 380, it is well supported. Accordingly, the Court holds Plaintiff has made a *prima facie* showing he had an improper romantic or sexual relationship with Robinson.

### b. Plaintiff has made a *prima facie* case Dr. Robinson's breach caused his injuries.

Next, Defendant Robinson argues even if "Dr. Robinson breached any standard of professional care, Plaintiff's malpractice claim fails as a matter of law because he cannot show causation." ECF No. 57, PageID.1363. In particular, Robinson argues Plaintiff has not excluded other reasonable hypotheses for his harm because he was disabled before starting treatment, he had an extramarital affair that

32

could have contributed to the dissolution of his marriage, and his current mental state seems similar to his state before starting treatment.  *Id.* at PageID.1364-66.

Like Defendant United States, Defendant Robinson also asserts Plaintiff's expert testimony is insufficient to establish causation.  *Id.* at PageID.1366-68 (citing *Teal*, 283 Mich. App. at 394).  The Court already held Plaintiff's Rule 26(b) reports sufficiently address causation in Section III.B.1.i. *supra* and will not repeat its analysis here.

To establish proximate cause under Michigan law, a plaintiff must show the defendant's breach was both the cause in fact and legal cause of his injury.  *Craig*, 471 Mich. at 86.

> The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.

*Id.* at 86-87 (quoting *Skinner*, 445 Mich. at 163).  When establishing "but for" causation, "a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause."  *Id.* at 87 (emphasis in original).  "[W]hile the evidence need not negate all other possible causes, [the Michigan Supreme Court] has

33

consistently required that the evidence exclude other reasonable hypotheses with a fair amount of certainty." *Id.* at 87-88 (cleaned up).

For the following reasons, the Court concludes there is a genuine dispute whether Defendant Robinson's alleged breach proximately caused Plaintiff's harm. As above, there is ample support in the record to corroborate Plaintiff's deposition testimony.

For example, Yvonne Cholewa testified that she blames Robinson for her divorce from Plaintiff.

Q. Now, do you blame Dr. Robinson for causing your divorce?

A. I do.

Q. Why?

A. Because it is my belief that Trey was doing better.  He was coming home.  We were about to start, you know, figuring out our new life together with him being out of the Marine Corps, and he went to the VA for help and assistance in getting back on track, and I believe that everything that happened with Dr. Robinson just opened a floodgate, if you will, to his --difficulties, declining mental health, and I believe that she was purposeful in what she did, and beyond how no one else at the VA took any kind of notice to what was going on, and I think that a person in her type of position should never be allowed to take advantage of someone in Trey's position.

34

ECF No. 64-19, PageID.4342.   She also testified Plaintiff told her Robinson was telling him he was not doing well because he was in a bad relationship and encouraging him to get a divorce.[3]  *Id.* at PageID.4347.  Defense Counsel asked Ms. Cholewa if there was any strain in their relationship upon Plaintiff's discharge and before he started treatment with Robinson.  *Id.* at PageID.4345.  Ms. Cholewa stated there was, but it was unrelated to his PTSD and was simply part of the normal adjustment period that happens whenever someone returns from deployment.  *Id.* She said, "[I]t was something -- nothing that he and I at that point in our lives or at that point in our marriage couldn't have gotten through or gotten past."  *Id.*

Ms. Cholewa further testified Plaintiff changed drastically due to the therapy sessions.

> Q. Now, would you say that Trey's behavior changed as a result of these interactions with Dr. Robinson?
>
> A. Absolutely.
>
> Q. Can you elaborate, please?

---

[3] The Court analyzes these statements for their effect on Ms. Cholewa, and their resultant effect on her relationship with Plaintiff, not the truth of whether Robinson actually made these comments.  *See* Fed. R. Evid. 801(c).

35

> A. Trey came home I think ready, like I said, to begin, you know, a new life and he wanted to do better and, you know, get a job and, you know, be a good example for our kids. He talked about that all the time, you know, being a good example for his sons, and then he started going to the VA in Detroit and it was just from there everything got turned upside down. It was like our whole lives completely changed. He started acting out. He stopped telling me things. He stopped coming home all the time. He was extremely angry. He was depressed. He was up. He was down. He was -- he stopped attending our son's soccer games. He just stopped being who he was as a person. He changed completely.

*Id.* at PageID.4343

Additionally, Dr. Hamid observed Plaintiff experiencing physical symptoms of anxiety when discussing his interactions with Robinson.

> Mr. Cholewa is unable to relax and navigates with a great deal of tension. He has recurrent episodes of anxiety. He reports with physical symptoms of anxiety, such as shortness of breath and sweaty palms. I noted that he became flushed in the face and neck and when talking about his traumatic experience with Dr. Robinson and prior combat related trauma.

ECF No. 64-5, PageID.3656.

Notably, in one of the recordings Plaintiff made of his treatment sessions, Robinson herself says she feels like she made him worse.

> FEMALE: - - functioning any better.
> MALE: I haven't gotten any better you don't think

36

FEMALE: No. If anything, I made you worse.
MALE: Oh, that's nice. How could you say that?
FEMALE: Do you think you're better than when I first - -
MALE: I didn't get any better and you made me worse? That's - -
FEMALE: Yeah. That's how I feel right now.

ECF No. 63-9, PageID.2828.

Accordingly, the Court finds Plaintiff has "introduce[d] evidence permitting [a] jury to conclude that the act or omission was *a* cause" of his injuries. *Craig*, 471 Mich. at 87 (emphasis in original). Moreover, this evidence is sufficient to "exclude other reasonable hypotheses with a fair amount of certainty." *Id.* at 87-88 (cleaned up). Robinson does not claim her actions, if true, would not have foreseeably caused Plaintiff "emotional pain and suffering," "aggravation of pre-existing psychological maladies, including post-traumatic stress disorder," "marital discord leading to divorce," and "denial of appropriate psychiatric therapy that was necessary for his mental health status." ECF No. 9, PageID.84-85; *see generally* ECF No. 57. Therefore, the Court holds Plaintiff has established a *prima facie* case Robinson's actions were both a "but for" and proximate cause of his injuries.

### ii. Plaintiff's Negligence Claim (Count II) is not Precluded BY His Medical Malpractice Claim (Count I).

Robinson avers Plaintiff's negligence claim must fail because it is precluded by his medical malpractice claim and he has not established a breach of a duty of

37

care or causation, ECF No. 57, PageID.1368-70.  The Court already addressed why the second arguments fails in Section III.B.2.i. *supra*, so it will only address the first argument here.

In Michigan, "[t]o prevail in a negligence claim, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Doe v. Shapiro*, No. 273950, 2008 WL 583556, at *5 (Mich. Ct. App. Mar. 4, 2008) (internal quotation marks omitted).  Doctor-patient relationships are "special relationships" that confer on the doctor the legal duty "to conform to a particular standard of conduct" to protect the patient from harm.  *Id.* at *5-6.

Robinson claims Plaintiff's negligence claim is an attempt to "avoid the necessity of expert testimony to establish the relevant standards of care, Dr. Robinson's alleged breach of said standards of care, and causation."  *Id.* at PageID.1369.  Specifically, Robinson asserts "Plaintiff alleges facts outside 'the realm of a jury's common knowledge and experience' regarding the applicable standards of care in relation to proper charting and documentation, and when a psychiatric referral is indicated."  *Id.* at PageID.1370 (quoting *Bryant v. Oakpointe Villa Nursing Ctr.*, 471 Mich. 411, 423 (2004)).

38

Recognizing the same set of facts can give rise to medical malpractice and/or negligence claims, the Michigan Supreme Court has explicitly counseled litigants to plead them in the alternative. *Bryant*, 471 Mich. at 432-33 ("However, in future cases of this nature, in which the line between ordinary negligence and medical malpractice is not easily distinguishable, plaintiffs are advised as a matter of prudence to file their claims alternatively in medical malpractice and ordinary negligence within the applicable period of limitations."). Thus, Plaintiff's negligence claim cannot be precluded merely by the fact that he has simultaneously brought a medical malpractice claim.

Nor does the Court agree with Defendant's characterization of Plaintiff's negligence claim as a method of circumventing the expert testimony requirement. As discussed throughout this Opinion, Plaintiff's Rule 26(b) reports are sufficient to support his medical malpractice claim. Similarly, Plaintiff has adequately established the elements of a negligence claim. As stated *supra*, Robinson owed Plaintiff a duty as his psychiatrist, and Plaintiff has established a *prima facie* case that Robinson breached her duty to him and that breach caused him injury. Moreover, issues such as whether Robinson should have documented all her sessions with Plaintiff or obtained his relevant patient history—let alone whether she should have engaged in a romantic and/or sexual relationship with him—are not "beyond

39

the realm of common knowledge and experience." *Bryant*, 471 Mich. at 422.

Accordingly, the Court holds Robinson is not entitled to summary judgment on this

claim.

> ### iii. There Is a Genuine Dispute Whether Dr. Robinson Exceeded the Scope of Her Consent for Treatment, so the Medical Battery Claim (Count III) Survives.

Lastly, Robinson avers Plaintiff's medical battery claims fails because it is

precluded by his medical malpractice claim and he has not established a genuine

issue of material fact whether a battery occurred.[4] ECF No. 57, PageID.1370-71.

Specially, she argues Plaintiff cannot bring a claim for medical battery because he

consented to the treatment, so his "claim is best characterized as a claim for medical

malpractice." *Id.* at PageID.1371 (citing *Young v. Oakland Gen. Hosp.*, 175 Mich.

App. 132, 139 (1989)).

In Michigan, a medical battery claim requires "medical treatment

administered without a patients' consent." *May v. Mercy Mem'l Nursing Ctr.*, No.

280174, 2009 WL 131699, at *8 (Mich. Ct. App. Jan. 20, 2009) (citing *In re

Rosebush*, 195 Mich. App 675, 680–681 (1992)). However, "there is no battery if

_____

[4] As above, the Court already addressed why the second arguments fails in
Section III.B.2.i. *supra*, so it will only address the first argument here.

the recipient consented to the contact." *Id.* (citing *People v. Starks*, 473 Mich. 227, 234 (2005)). Nevertheless, "if consent has been given but the scope of the consent is exceeded, there has been an assault and battery." *Banks v. Wittenberg*, 82 Mich. App. 274, 279–80 (1978); *Toporek v. Anandakrishnan*, No. 210751, 2000 WL 33519697, at *1 (Mich. Ct. App. Apr. 11, 2000).

Here, the Court finds there is a genuine dispute whether Robinson's actions exceeded the scope of the consent she was given. It is indisputable Plaintiff consented to the overall psychotherapy treatment with Robinson. However, as Robinson herself acknowledged, psychotherapy does not include sexual contact. ECF No. 63-7, PageID.2799. Thus, there is a genuine dispute whether Plaintiff's consent to therapeutic treatment could have included consent to sexual touching as well. As such, Robinson is not entitled to summary judgment on Plaintiff's claim for medical battery/criminal sexual misconduct.

## IV.  CONCLUSION

Accordingly, for the reasons articulated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant United States' Motion for Summary Judgment (ECF No. 56) and **DENIES** Defendant Robinson's Motion for Summary Judgment (ECF No. 57).

41

**IT IS SO ORDERED**.


s/Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  January 24, 2022


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 24, 2022, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager

42