UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Trey Cholewa,

    Plaintiff,

v.

United States of America and
Jennifer Robinson, M.D.,

    Defendants.

Case No. 19-cv-12190

U.S. District Court Judge
Gershwin A. Drain

_____/

**OPINION AND ORDER DENYING DEFENDANT ROBINSON'S RENEWED PETITION FOR SUBSTITUTION AND REPRESENTATION BY THE UNITED STATES PURSUANT TO 28 U.S.C. § 2679(d)(3) (ECF No. 58)[1] AND SETTING NEW DATES**

### I. Introduction

Plaintiff Sergeant Trey Cholewa filed the instant Federal Tort Claims Act ("FTCA") action against Defendants United States of America (the "United States" or "Government") and Jennifer Robinson, M.D. ("Robinson"). ECF No. 9. He

---

[1] As discussed in greater detail in Section II, subsection B, Defendant Robinson has already filed a Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3). *See* ECF No. 19. To avoid confusion, the Court refers to the instant Petition as her "Renewed Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3)."

1

alleges Defendant Robinson failed to provide him proper care and sexually harassed and molested him while serving as his psychiatrist at the John D. Dingell VA Medical Center (the "VA Center" or "VA") in Detroit, Michigan. *Id*.

Presently before the Court is Defendant Robinson's Renewed Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3). *See* ECF No. 58. Plaintiff concurred in the requested relief,[2] ECF No. 65, and the Government responded in opposition to the Petition, ECF No. 66. Robinson replied to the Government's Response. ECF No. 68. The Court held a hearing on this matter on January 20, 2023. For the following reasons the Court **DENIES** Robinson's Renewed Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3) (ECF No. 58).

## II. BACKGROUND

### A. Factual Background

The Court laid out the relevant facts in its January 24, 2022 Opinion and Order resolving Defendants' Motions for Summary Judgment.

---

[2] Although Plaintiff concurs in Defendant Robinson's request for substitution, he opposes the Petition to the extent Robinson alleges that Plaintiff has not presented evidence that she violated the applicable standards of care for a Board-Certified psychiatrist while treating Plaintiff. ECF No. 65, PageID.4367. Plaintiff also incorporates by reference his responses to both Defendants' Motions for Summary Judgment. *Id.* at PageID.4368.

2

Plaintiff is a veteran of the United States Marine Corps. ECF No. 56-2, PageID.670. He served five tours as a machine gunner and eventually reached the rank of sergeant. *Id.* at PageID.1391, PageID.1392. Plaintiff was medically discharged in May 2015. *Id.* at PageID.1397, PageID.1445. The VA determined he is 100% disabled and diagnosed him with sleep apnea, post-traumatic stress disorder ("PTSD"), migraines, and various physical problems with his back, eye, ankle, wrist, etc. ECF No. 56-3, PageID.816. The Social Security Administration found Plaintiff is similarly impaired. ECF No. 56-4. Nevertheless, upon his return, "[h]e plan[ned] on being a full-time father now as his wife works" and wanted "to use his GI bill to go back to college." ECF No. 63-4, PageID.2637.

After returning to Michigan, Plaintiff began receiving mental health treatment at the Detroit VA Center in June 2015. In September of that year, he began treating with Defendant Robinson, a psychiatrist at the VA Center. ECF No. 57-2, PageID.1450. Robinson's progress notes document 21 therapy sessions between herself and Plaintiff between September 2015 and June 2018. *See* ECF No. 57-17. However, the VA Center later determined she did not document all their sessions. ECF No. 56-9, PageID.1086.

Plaintiff testified Robinson began making amorous comments to him during their first session, ECF No. 57-2, PageID.1451, and escalated to massaging, kissing, and fondling him, *id.* at PageID.1484. He testified the sexual contact happened from March 2017 to August 2017, *id.* at PageID.1488, and occurred more than ten but less than twenty times, *id.* at PageID.1485. He further testified he and Robinson never had full sexual intercourse, *id.*, because they were usually interrupted, but she invited him to accompany her to a conference in Boston so they could "be alone," *id.* at 1478-79. However, Plaintiff did not go on this trip. *Id.* at PageID.1479.

3

Additionally, Plaintiff testified Robinson encouraged him to leave his wife. *See, e.g.*, *id.* at PageID.1468-69, PageID.1474. While Plaintiff testified Robinson did not tell him she was thinking of leaving her husband, he did testify she told him she was moving closer to where he lived and hoped to run into him outside the VA Center. *Id.* at PageID.1476. Plaintiff ultimately filed for divorce in January 2018, and his wife countersued for divorce in April 2018. ECF No. 56-17. The divorce was finalized in October 2018. *Id*. Plaintiff admits he was having an affair with a woman other than Robinson leading up to the divorce. ECF No. 57-2, PageID.1440- 41. However, he and his ex-wife had reconciled and gotten engaged again by the time Ms. Cholewa was deposed. ECF No. 56-15, PageID.1182-83.

Plaintiff did not report Robinson's alleged misconduct to anyone at the VA Center while it was ongoing. ECF No. 57-2, PageID.1486. He also testified Robinson actively attempted to hide her misconduct by placing her trashcan outside her office so the janitor would not interrupt them and having Plaintiff come straight to her office for his appointments without checking in at the front desk. *Id.* at PageID.1479-80.

Plaintiff stopped treating regularly with Robinson on August 22, 2017. ECF No. 57-17, PageID.1662[, 1664]. He returned to the VA Center on June 13, 2018 after unsuccessfully attempting to see a provider in the community. *Id*. That day, Plaintiff reported that he had been off his medication for a few months and his symptoms had "worsened severely," but that he had seen slight improvement after restarting his old medications. *Id*. This was his last recorded session with Robinson. *See* ECF No. 57-17. Plaintiff declined any follow-up appointments at the VA Center and requested a referral to a community provider. *Id.* at PageID.1663.

On June 19, 2018, Plaintiff began treating with Karen Brickner, M.A., a limited license psychologist at United Psychological Services

4

("UPS"). ECF No. 56-5, PageID.839. During his first session, he spoke about being "sexually harassed" by Robinson. ECF No. 63-10, PageID.2834. Plaintiff treated with Brickner at UPS until October 2018 but stopped showing up for reasons unknown to Brickner. ECF No. 56-6, PageID.850, PageID.852. Plaintiff restarted therapy with Brickner in December 2020 and was still going at the time the [motions for summary judgment] were filed. *Id.* at PageID.850. He also underwent psychological and neuropsychological evaluation with Dr. Nida Hamid and discussed his experiences with Robinson with her. *See, e.g.*, ECF No. 63-5, PageID.2646-47.

On November 12, 2018, Plaintiff submitted a letter ("Notice of Intent") to the VA alleging Robinson "made several inappropriate sexual advances and comments toward him" and initiated sexual contact during his therapy appointments. ECF No. 56-9, PageID.1085. Subsequently, on November 19, 2018, Plaintiff filed an administrative tort claim with the same allegations. ECF No. 56-8, PageID.1078. In response, the VA Center conducted an administrative factfinding, which was carried out by Nicole Stromberg, M.D., Associate Chief of Staff-Mental Health. *See* ECF No. 56-9. Dr. Stromberg did not find concrete evidence to support Plaintiff's allegations. *Id.* at PageID.1090-91. However, she found Robinson's call volume with [Plaintiff] concerning because Robinson had three times as many calls with Plaintiff as her next most contacted patient, she initiated 74% of the calls, and none of the calls were documented. *Id.* Dr. Stromberg was similarly concerned by Robinson's pattern of not documenting every treatment session and unwillingness to share even redacted personal phone records . . . . *Id.* Dr. Stromberg ultimately recommended Robinson "be relieved of all patient care duties." *Id.* at PageID.1091.

The VA Professional Standards Board did not adopt this recommendation and instead gave Robinson a written reprimand, placed her on "focused professional practice evaluation," and

5

>   prohibited her from seeing outpatient veterans. ECF No. 56-10, PageID.1101-03; ECF No. 56-11; PageID.1107, ECF No. 56-7, PageID.1028-29. Robinson successfully completed this probationary period. *Id.* at PageID.1028.
>
>   However, during this litigation, Plaintiff produced audio and video recordings [that purport to be] of himself and Dr. Robinson in her office. In one recording, Plaintiff refers to Robinson massaging and kissing him, and Robinson says she thinks she is in love with him. ECF No. 63-8, PageID.2818. After the Professional Standards Board reviewed these recordings and Robinson's deposition transcript, the VA summarily suspended and later revoked Robinson's clinical privileges. ECF No. 56-13.

ECF No. 80, PageID.4423 (first two alterations in original).

**B. Procedural Background**

Plaintiff brings claims for medical malpractice (Count I), ordinary negligence (Count II), and medical battery (Count III). ECF No. 9. The Government moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing, *inter alia*, that the Court lacks subject matter jurisdiction over Plaintiff's claims against the United States because Robinson was not acting within the scope of her employment and, under the FTCA, the Government retains sovereign immunity from claims arising under such circumstances. ECF No. 13, PageID.111–16. Shortly thereafter, Defendant Robinson filed her first Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3) (hereinafter, "Petition for Substitution") on February 4, 2020. *See* ECF No. 19. Specifically, she requested

the Court (1) certify that her actions as alleged in the Amended Complaint were within the scope of employment and (2) subsequently deem this action as being brought against the United States and substitute the Government as the sole Defendant. *Id*.

After a hearing, this Court denied both the Government's Motion to Dismiss and Robinson's first Petition for Substitution. ECF No. 31. Specifically, the Court found the cases on which the Government relied were not determinative as to whether Defendant Robinson's alleged actions were within the scope of her employment because they did not involve a mental health professional engaging in sexual misconduct with her patient under the guise of treatment or the role of transference in psychotherapy. ECF No. 31, PageID.457–59. The Court also concluded that discovery was needed to determine whether Defendant Robinson was acting within the scope of her employment. *Id.* at PageID.461, 470.

Both Defendants moved for summary judgment after the close of discovery. *See* ECF Nos. 56, 57. As relevant here, the Government reasserted its jurisdictional argument from its Motion to Dismiss. ECF No. 56, PageID.640–49. After a hearing, the Court again found the cases on which the Government relied distinguishable. ECF No. 80, PageID.4438–39. The Court also found that there was a genuine dispute of material fact as to whether other VA employees were aware of Robinson's

7

alleged misconduct such that the Government could be held vicariously liable for her alleged actions. *Id.* at PageID.4440–41.

Defendant Robinson filed the instant Renewed Petition for Substitution (ECF No. 58) along with her Motion for Summary Judgment.

### III. LAW & ANALYSIS

#### A. Legal Standard

##### 1. The Westfall Act

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, commonly known as the "Westfall Act," immunizes United States employees from liability for their negligent and wrongful acts or omissions while acting within the scope of their office or employment. 28 U.S.C. § 2679(b)(1). The Westfall Act empowers the Attorney General to certify that any federal employee sued for wrongful or negligent conduct "was acting within the scope of [her] office or employment at the time of the incident out of which the claim arose." *Osborn v. Haley*, 549 U.S. 225, 230 (2007) (quoting § 2679(d)(1), (2)). "The Attorney General has delegated to the United States Attorney the authority to provide such certification." *Dolan v. United States*, 514 F.3d 587, 592 (6th Cir. 2008) (citing 28 C.F.R. § 15.4; *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996)). Upon certification, "the employee is dismissed from the action,

8

and the United States is substituted as defendant in place of the employee." *Id*. In this way, "[T]he Westfall Act[] accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn*, 549 U.S. at 229.

When, as happened in the instant case, the Attorney General refuses to certify the federal employee was acting under the scope of her employment,

> the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679 (d)(3). "[W]hether an employee was acting within the scope of his employment is a question of law, not fact, made in accordance with the law of the state where the conduct occurred." *Dolan*, 514 F.3d at 593 (quoting *Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002), *overruled on other grounds by Hawver v. United States*, 808 F.3d 693 (6th Cir. 2015)). Nevertheless, "when a district court is reviewing a certification question under the Westfall Act, it must

9

identify and resolve disputed issues of fact necessary to its decision before entering the order."³ *Id.* (quoting *Singleton*, 277 F.3d at 870).

Defendant Robinson bears the burden of showing, by a preponderance of the evidence, that her actions fell within the scope of her employment and, consequently, that the United States Attorney erred in denying her certification request. *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993); *see also Sullivan v. Shimp*, 324 F.3d 397, 400 (6th Cir. 2003) (placing burden of proof on defendant challenging Government's denial of scope of employment certification); *Laible v. Lanter*, No. 21-102-DLB-CJS, 2022 U.S. Dist. LEXIS 99440, at *45 (E.D. Ky. June 3, 2022) ("To prevail on court review of a Westfall certification, a defendant must establish that he was a federal employee acting within the scope of his employment by a preponderance of the evidence."), *appeal filed,* No. 22-5496 (6th Cir. Jun. 13, 2022).

### 2. Scope of Employment

Michigan law governs the Court's analysis of whether Robinson was acting within the scope of her employment. *Dolan*, 514 F.3d at 593. As this Court explained in its August 10, 2020 Opination and Order:

> In Michigan, an individual acts "within the scope of employment" when she is "engaged in the service of h[er] master, or while about h[er]

---

³ Although the Court is permitted to hold an evidentiary hearing to aid in resolving a petition for certification and substitution under the Westfall Act, *Dolan*, 514 F.3d at 593, the Parties agreed that additional evidence is not necessary at the hearing on the Petition.

10

> master's business." *Hamed v. Wayne Cnty.*, 490 Mich. 1; 803 N.W.2d 237, 244-45 (Mich. 2011). Even when an "act [is] contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. However, "[i]ndependent action, intended solely to further the employee's individual interests, cannot be fairly characterized as falling within the scope of employment." *Id*.

ECF No. 31, PageID.453–54. Nevertheless, Michigan courts recognize "that an employer can be held liable for its employee's conduct if . . . [the] employer had (1) actual or constructive knowledge of prior similar conduct and (2) actual or constructive knowledge of the employee's propensity to act in accordance with that conduct." *Hamed*, 490 Mich. at 12.

### B. Discussion

"On questions of state law, [federal courts are] bound by the rulings of the state supreme court." *Ky. Comm. Mobile Radio Serv. Emergency Telecomms. Bd. v. TracFone Wireless, Inc.*, 712 F.3d 905, 912 (6th Cir. 2013) (citing *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 604-05 (6th Cir. 1975)). Because "the Michigan Supreme Court has not addressed the issue, [the Court] must attempt to ascertain how that court would rule if it were faced with the issue." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 636 (6th Cir. 2018) (alteration added) (quoting *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)). "The Court may use the decisional law of the state's lower courts, other federal courts construing state

11

law, restatements of law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination." *Id.* (quoting *Meridian*, 197 F.3d at 1181). In making its determination, the Court "should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *Meridian*, 197 F.3d at 1181).

Here, as this Court has indicated in its prior Opinion and Orders, neither Michigan nor federal courts construing Michigan law have addressed the very narrow set of circumstances present in this case. Specifically, the Court has not found, and the Parties have not presented, any Michigan cases involving a mental health professional mismanaging transference, leading her to engage in sexual misconduct with her patient under the guise of treatment. Nevertheless, cases applying Michigan law to similar issues indicate that the Michigan Supreme Court would find Robinson was acting outside the scope of her employment as a mater of law.

In *Tolbert v. United States*, the plaintiff began a "romantic sexual relationship" with the substance abuse counsel provided to her by the VA while she was participating in individual and group therapy sessions with him. No. 17-10273, 2017 U.S. Dist. LEXIS 209939, at *2–3 (E.D. Mich. Dec. 21, 2017). The Plaintiff alleged the defendant-counselor manipulated and abused her and encouraged her to

12

drink alcohol notwithstanding the fact that he was in recovery for alcohol dependency. *Id.* at *3. Another court in this District found the defendant-counselor's actions were "'beyond the scope of [his] employment' with the VA as a therapist" because there was no allegation the relationship occurred during the defendant-counselor's work hours or on VA property. *Id.* at *6 (quoting *Hamed*, 490 Mich. at 11). Notably, however, the *Tolbert* Court noted that "even if there were [allegations the relationship occurred during the defendant-counselor's work hours or on VA property], [the defendant's] independent actions were accomplished solely in furtherance of his own interests" because the "United States did not benefit in any way from [the defendant's] actions." *Id.* (cleaned up).

The therapeutic relationship at issue in *Tolbert* is distinct from the one at issue in the present case in that a substance abuse counselor does not have quite the same control over his or her patient's wellbeing as a psychiatrist. Additionally, and because of the different medical relationship at issue, the *Tolbert* Court did not address the phenomenon of transference. Nevertheless, the *Tolbert* Court's conclusion that the Government did not at all benefit from the defendant's actions is instructive. It is likely that Michigan courts would similarly find that Robinson's "actions were accomplished solely in furtherance of h[er] own interests" and that the "United States did not benefit in any way from" her alleged sexual misconduct. *Id.* (cleaned up).

13

Additionally, the *Tolbert* Court noted the plaintiff had not claimed other VA staff knew of the defendant's actions such that the United States should be held vicariously liable. *Id*. Likewise, here, there is no evidence that other VA employees knew of Robinson's alleged misconduct. Plaintiff testified that employees "should have known" because they would comment on him visiting without an appointment and noted that he received "special treatment." ECF No. 56-2, PageID.774-75. He also testified that he thought the other employees could hear what happened in Robinson's office, *id.* at PageID.775, and the female voice in one of the recordings explains that she is speaking quietly for fear of being overheard, ECF No. 63-9, PageID.2828. However, these are all speculative and insufficient to establish actual knowledge on the part of the VA employees. The Court also notes that Robinson started working with the VA and treating Plaintiff right after completing her residency, ECF No. 58-2, PageID.1901, so there was no history of prior similar conduct from which the VA could gain constructive knowledge.

In contrast, Dr. Stromberg, Robinson's supervisor, testified that no one at the VA was aware of the alleged misconduct until Plaintiff filed his Notice of Intent. ECF No. 56-7, PageID.939. Her findings from the investigation also state that none of the people she interviewed were aware of the relationship. ECF No. 56-9, PageID.1088. While Plaintiff's testimony was sufficient to survive the Government's Motion for Summary Judgment—where the Court had to view the

14

evidence, and draw inferences, in Plaintiff's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)—it is insufficient to impute knowledge to the VA employees in the face of the Dr. Stromberg's testimony corroborated by her investigation findings.

Similarly, in *Doe v. Young*, several plaintiffs alleged that the defendant-chiropractor sexually molested them under the guise of treating them for misplaced ribs. Nos. 335089, 335104, 335105, 335106, 335107, 335108, 335109, 335110, 2018 Mich. App. LEXIS 185, at *2 (Mich. Ct. App. Jan. 23, 2018) (per curiam). The defendant-chiropractic clinic and defendant- clinic owner moved for summary disposition, asserting that they could not be held vicariously liable for the defendant-chiropractor's sexual misconduct because it was outside the scope of his employment. *Id.* at *4. A panel of the Michigan Court of Appeals affirmed the trial court's grant of summary disposition because, *inter alia*, the Michigan Supreme Court had previously rejected the theory that employers could be liable for employees' intentional or reckless torts solely because the employee's agency relationship with employer facilitated the torts. *Id.* at *16–17 (citing *Zsigo v. Hurley Med. Ctr.*, 475 Mich. 215, 716 N.W.2d 220 (2006)). In particular, the Michigan Supreme Court declined to adopt the "aided by the agency exception" because "'it is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is

15

Case 2:19-cv-12190-GAD-RSW ECF No. 92, PageID.4490 Filed 01/24/23 Page 16 of 19

always aided in accomplishing the tort.'" *Id.* at \*18. (quoting *Zsigo*, 475 Mich. at 226 (internal quotation marks omitted)). The *Young* Court specifically noted that, in that case, there was no evidence the defendant-clinic or defendant-owner did more to "aid" the defendant-chiropractor than "present [him] with the opportunity for his misconduct through employment." *Id.* at \*19 n.7 (citing *Salinas v. Genesys Health Sys.*, 263 Mich. App. 315, 321; 688 N.W.2d 112 (2004)).

As with *Tolbert supra*, *Young* does not address the particular relationship at issue in the instant case or the role of transference in the mental health professional-patient relationship. Nevertheless, it is instructive. Plaintiff and Defendant Robinson argue that "Robinson mishandled the psychological phenomenon of transference and therefore grossly mismanaged her therapeutic relationship with Plaintiff – a therapeutic relationship undertaken in furtherance of her employer's interests." ECF No. 58, PageID.1878. In some ways, this is similar to the "aided by the agency" theory the Michigan Supreme Court rejected in *Zsigo*. To an extent, Plaintiff and Defendant Robinson contend that Robinson's employment at the VA and her role as Plaintiff's psychiatrist "provided [her] with the ways and means to enable her to commit" the alleged sexual misconduct. *Young*, 2018 Mich. App. LEXIS 185, at \*16. This was the exact argument the *Young* Court rejected based on the Michigan Supreme Court's holding in *Zsigo*.

16

Finally, although less persuasive than decisions applying Michigan law, the Court notes that accepting the mismanagement of transference as support for finding that romantic or sexual misconduct is within the scope of a mental health professional's employment seems to be out of favor. Indeed, the Court acknowledges that the cases on which Plaintiff and Defendant Robinson rely are from the 1980s or 1990s. *See Benavidez v. United States*, 177 F.3d 927, 930 (10th Cir. 1999); *Simmons v. United States*, 805 F.2d 1363, 1364 (9th Cir. 1986). Nor was the Court able to find more recent decisions. *See, e.g.*, *Vigilant Ins. Co. v. Employers Ins. of Wausau*, 626 F. Supp. 262, 265 (S.D.N.Y. 1986); *Doe v. Samaritan Counseling Ctr.*, 791 P.2d 344 (Alaska 1990). As such, it appears that the current majority rule is that a mental health professional who engages in sexual misconduct with her patient is not acting within the scope of her employment even if she is mismanaging the psychological phenomenon of transference. *See, e.eg.*, *Cowher v. United States*, No. CV 120-178, 2022 WL 3216348, at *4 (S.D. Ga. Aug. 9, 2022) (rejecting plaintiff's argument that defendant-therapist "took advantage of the transference phenomenon and overcame her will to accomplish his goal of having intercourse with her" and finding defendant was acting outside the scope of his employment under Georgia law (cleaned up)).

Thus, based on how courts applied Michigan law in *Tolbert* and *Young* and a survey of how other jurisdictions currently treat transference, this Court concludes
17

the Michigan Supreme Court would likely determine that Robinson's alleged conduct falls outside the scope of her employment as a matter of law. As such, the Court must deny Defendant Robinson's request for certification and, consequently, her request for the Court to deem this action as against the United States and substitute the Government as the sole defendant.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, **IT IS HEREBY ORDERED** that Defendant Robinson's Petition for Substitution and Representation by the United States Pursuant to 28 U.S.C. § 2679(d)(3) (ECF No. 58) is **DENIED**.

**IT IS FURTHER ORDERED** that the following dates shall govern this matter:

| | |
|---|---|
| Facilitation:[4] | March 2023 |
| Settlement Conference: | April 2023 |
| Motions *in Limine* cutoff: | May 3, 2023 |
| Joint Final Pretrial Order: | May 3, 2023 |
| Final Pretrial Conference: | May 24, 2023 at 2:30 p.m. |

---

[4] A proposed stipulated order referring case to facilitation shall be submitted to the Court via the utilities function on CM/ECF **no later than January 30, 2023**. The proposed order must identify the facilitator and the date set for facilitation. Facilitation must occur **no later than March 31, 2023**.

  Trial date:        June 7, 2023 at 9:00 a.m.

  The practices and procedures set forth in this Court's August 10, 2020 Scheduling Order shall remain in effect. ECF No. 32, PageID.47376.

  **IT IS SO ORDERED**.

                /s/ Gershwin Drain
                GERSHWIN A. DRAIN
                UNITED STATES DISTRICT JUDGE

Dated: January 24, 2023

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
January 24, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager