UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREY CHOLEWA,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and
JENNIFER ROBINSON, M.D.,

    Defendants.

Civil No. 19-12190

Honorable Gershwin A. Drain

**DEFENDANT UNITED STATES' PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## INTRODUCTION

The Sixth Circuit directed the Court to make factual findings about whether Defendant Jennifer Robinson, M.D., engaged in sexual contact with Plaintiff Trey Cholewa. The evidentiary hearing reinforced the Court's previous conclusion that any sexual contact between Cholewa and Dr. Robinson occurred outside the scope of Dr. Robinson's employment with the VA.

## PROPOSED FINDINGS OF FACT

The United States takes no position on the credibility of Cholewa's testimony. However, Dr. Robinson has the burden of proof at this stage of the litigation to show that all the misconduct alleged by Cholewa was within the scope of her employment, and she invoked her Fifth Amendment right to remain silent in response to all questions concerning her interactions with Cholewa.

1. Cholewa served in the United States Marine Corps and did four combat tours of duty – two in Iraq and two in Afghanistan – as a machine gunner. (ECF No. 139, Hearing Transcript at 29:21-25, 31:9-11).

2. Cholewa was discharged from the military in 2015. (*Id.* at 35:13-14).

3. Cholewa was deemed 100% disabled upon his discharge from the Marine Corps. (*Id.* at 9:8-10).

4. Cholewa's first visit with Dr. Jennifer Robinson at the John D. Dingell VA medical center in Detroit was on September 16, 2015. (*Id.* at 40:18-21; Ex. 3, Progress Note, attached as Ex. A).

5. Cholewa's initial visits with Dr. Robinson – for seventeen months, from September 2015 to February 2017 – did not involve any sexual

contact between the two of them. (ECF No. 139, Hearing Transcript at 44:19-22).

6. Cholewa testified that his first physical contact with Dr. Robinson occurred in approximately March 2017, and that involved a "small hug." (*Id.* at 45:17-24).

7. Cholewa did not consider this "small hug" as an "overt sexual act," but supportive in nature. (*Id.* at 45:25, 46:1-5).

8. Cholewa would see Dr. Robinson for "walk-in" appointments, outside of his regularly scheduled visits. (*Id.* at 51:9-12).

9. Eventually, Cholewa would bypass the VA mental health receptionist desk and proceed directly to Dr. Robinson's office for walk-in appointments. (*Id.* at 53:5-10).

10. Cholewa testified that, beginning in May 2017, the physical contact between him and Dr. Robinson increased and involved Dr. Robinson giving him back rubs and kissing him. (*Id.* at 55:1-10).

11. Cholewa testified that Dr. Robinson told him that she dreamt of having sexual intercourse with him on her desk, and Cholewa responded "why does it have to be a dream." (*Id.* at 59:4-13).

12. Cholewa testified that he and Dr. Robinson then proceeded to initiate sexual intercourse –she put his hand down her stockings and pulled out his penis – but they were interrupted by a knock on Dr. Robinson's door. They quickly gathered themselves, and never consummated the act of sexual intercourse. (*Id.* at 59:16-22).

13. Cholewa testified that, on another occasion, Dr. Robinson asked him to come to her side of her desk, pulled his penis out, and kissed it. (*Id.* at 60:15-20).

14. Cholewa testified that the sexual contact between him and Dr. Robinson all occurred during the May-August 2017 timeframe. (*Id.* at 59:23-25, 60:1).

15. Cholewa claimed that not all therapy sessions during the May-August 2017 time-period included sexual contact, and some were just "regular sessions." (*Id.* at 61:6-11).

16. Any sexual contact that occurred between Dr. Robinson and Cholewa occurred toward the end of a session, after treatment had concluded. (*Id.* at 55:14-16, 58:21-24, 60:10-19.)

17. Cholewa claimed that he secretly audio recorded snippets of his interactions with Dr. Robinson, including one from August 11, 2017;

Cholewa identified the voices on this recording as his and Dr. Robinson's. (*Id.* at 62:5-14).

18. In the recording, the male voice states: "You come over here and give me a massage and kiss me and – [inaudible female voice, male voice continues] – Because why?" The female voice then states: "Because I think I happen to be in love with you. That might have something to do with it." (Ex. 67, Transcript of Audio Recording, played in open court, attached as Ex. B).

19. Dr. Robinson asserted her Fifth Amendment right against self-incrimination when asked if it was her voice on this recording. (ECF No. 139, Hearing Transcript at 109:5-9).

20. Cholewa testified that there was no further sexual contact between him and Dr. Robinson after the date of this recording, August 11, 2017. (*Id.* at 63:12-14).

21. Cholewa did not tell anyone at the VA about the sexual contact between him and Dr. Robinson while it was ongoing. (*Id.* at 64:23-25, 65:1).

22. Cholewa never asked to be assigned to a different psychiatrist at the VA while the sexual contact between him and Dr. Robinson was ongoing. (*Id.* at 65:2-5).

23. Cholewa testified that he did not know whether anyone else at the VA knew about the sexual contact between him and Dr. Robinson while it was ongoing. (*Id.* at 65:13-21).

24. Cholewa testified that Dr. Robinson took steps to prevent others at the VA from learning about her sexual contact with Cholewa, such as placing the trashcan outside of her office so that they weren't interrupted by janitorial staff and calling him from a blocked phone number. (*Id.* at 58:15-22).

25. Cholewa stated that on one occasion Dr. Robinson invited him on a trip to Boston, so that the two of them could be intimate without detection. (*Id.* at 69:7-9). Cholewa and Dr. Robinson did not go on this trip together.

26. Dr. Robinson went to Wayne State medical school and is board-certified in psychiatry. (*Id.* at 86:16-17, 89:4-8).

27. Dr. Robinson did her medical residency at the Detroit VA hospital. (*Id.* at 97:11-13).

28. Dr. Robinson asserted her Fifth Amendment right against self-incrimination in response to all questions relating to her treatment of, and interactions with, Cholewa. (*Id.* at 90-95).

29. Cholewa filed an administrative tort claim with the VA in November 2018. (Ex. 32, SF-95 Tort Claim, attached as Ex. C).

30. Upon receipt of Cholewa's tort claim, the VA summarily suspended Dr. Robinson's clinical privileges. (ECF No. 139, Hearing Transcript at 101:1-4).

31. Upon the VA's receipt of the tort claim, Dr. Robinson's direct supervisor – chief of mental health Dr. Nicole Stromberg – questioned Dr. Robinson about Cholewa's allegations. (*Id.* at 100:7-9, 18-21; 111:12-15).

32. Dr. Stromberg then began an investigation into Cholewa's allegations. (*Id.* at 100:22-25; 115:8-13).

33. As part of her investigation, Dr. Stromberg attempted to interview Dr. Robinson in person, but eventually interviewed her over the telephone when Dr. Robinson stated that she was too depressed to come into work. (*Id.* at 102:4-7, 103:4-9; Ex. 36, Dr. Robinson Interview Transcript, attached as Ex. D).

7

34. Dr. Stromberg – and another VA supervisor, Dr. Michelle Abela – transcribed their telephone interview with Dr. Robinson verbatim, to the best of their abilities. (ECF No. 139, Hearing Transcript at 136:22-25).

35. Dr. Robinson did not admit to any sexual contact with Cholewa during the interview. (*Id.* at 105:17-20, 132:22-24).

36. Cholewa did not respond to Dr. Stromberg's attempts to interview him about his allegations. (*Id.* at 127:11-17).

37. Dr. Stromberg interviewed seventeen other VA mental health employees, to see if any had any knowledge of a sexual relationship with Cholewa and Dr. Robinson. (*Id.* at 137:14-17; Ex. 34, Interview Summaries, attached as Ex. E).

38. None of the VA employees interviewed by Dr. Stromberg had any knowledge of an improper relationship between Cholewa and Dr. Robinson. (*Id.*; ECF No. 139, Hearing Transcript at 138:11-16).

39. Dr. Robinson did not believe that any VA employee had any knowledge of Cholewa accusations against her. (*Id.* at 107:6-9).

40. At the conclusion of her investigation, Dr. Stromberg authored a written factfinding report. (Ex. 45, Factfinding Investigation, attached as Ex. F).

41. Dr. Stromberg recommended that Dr. Robinson's employment be terminated, but the VA's clinical executive committee did not follow that recommendation at that time, and instead issued Dr. Robinson a written reprimand and transferred from outpatient care to inpatient care. (ECF No. 139, Hearing Transcript at 108:8-23; 115:5-7).

42. After the VA received the audio recordings from Cholewa (during this litigation), Dr. Robinson's employment with the VA was then terminated. (*Id.* at 109:10-19).

43. Dr. Robinson acknowledged that she knew that Michigan's public health code prohibits sexual contact between health professionals and patients. (*Id.* at 109:22-25).

44. Dr. Robinson also acknowledged that she knew that it is a criminal offense in Michigan for a mental health professional to have a sexual relationship with patient while treatment is ongoing, and for two years after treatment ceases. (*Id.* at 110:1-6).

9

45. The VA could not reasonably have foreseen that Dr. Robinson would violate Michigan's criminal law and public health code.

## PROPOSED CONCLUSIONS OF LAW

The sole purpose of the evidentiary hearing is to determine whether sexual contact occurred between Cholewa and Dr. Robinson. This Court "has already ruled that sexual misconduct by a psychiatrist against a patient, whether occurring in the office or otherwise, cannot be within the scope of an individual's employment under Michigan law." (ECF No. 113, Order, PageID.4619). More recently, the Court reiterated that "[t]he issue of whether a romantic or sexual relationship is within the scope of Dr. Robinson's employment has already been determined as a matter of law by the Court." (ECF No. 138, Order, PageID.4776, citing ECF No. 92, Order).

The Westfall Act permits a government employee to challenge the Attorney General's refusal to certify that the employee was acting in the scope of their employment. When the Attorney General declines to certify that a federal employee was acting in the scope of her employment, as happened here, the employee bears the burden of presenting evidence to overturn that decision. *See Green v. Hall*, 8 F.3d

695, 698 (9th Cir. 1993) ("[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence."). Thus, Dr. Robinson bears the burden of proof.

The Sixth Circuit's remand order stated that "[t]he district court's opinion arrived at the *legal* conclusion that, under Michigan law, sexual conduct is outside the scope of a psychiatrist's employment. But, under that view of the law, the scope determination still turns on the disputed factual question of whether Robinson *did* engage in sexual conduct with Cholewa. If, as a factual matter, no sexual conduct occurred, then there was no basis in the court's order for denying Robinson's certification petition." *Cholewa v. United States*, No. 23-1278, 2024 WL 869550, at *3 (6th Cir. Feb. 29, 2024) (emphasis in original). Thus, the only issue for the Court to determine is whether sexual contact occurred between Dr. Robinson and Cholewa.

Cholewa testified at the evidentiary hearing about sexual contact between himself and Dr. Robinson. The government takes no position on the credibility of Cholewa's testimony and leaves it to the Court to evaluate Cholewa's truthfulness. Dr. Robinson offered no testimony of

11

her own to rebut Cholewa's testimony, and instead invoked her Fifth Amendment right to remain silent in response to all questions about her interactions with Cholewa. The Court can draw adverse inference against Dr. Robinson based on her refusal to testify. *See Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005) (observing that "a negative inference can be drawn from a failure to testify in civil proceedings, and that drawing such an inference violates neither the Fifth Amendment nor Due Process") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976)). The Court "may assume that the answer not given would be harmful to the party's interests." *United States v. Rohlig*, No. 21-10666, 2023 WL 9231997, at *2 (E.D. Mich. Mar. 9, 2023).

If the Court determines that Dr. Robinson has not met her burden – and that sexual contact in fact occurred – then the Court also must sort out which of Cholewa's claims should proceed against the government, and which of Cholewa's claims should proceed against Dr. Robinson. Where, as here, a complaint alleges claims which encompass multiple incidents, a district court analyzing whether certification under the Westfall Act would be proper should apply the "scope of

12

employment" test to each incident—rather than to the complaint as a whole—to see if a certification and substitution of the United States is proper as to any of the alleged incidents. *See Lyons v. Brown*, 158 F.3d 605, 608, 610-11 (1st Cir. 1998); *see also Rasul v. Myers*, 512 F.3d 644, 661 n.11 (D.C. Cir. 2008) ("[W]here a single case involves multiple claims, certification is properly done at least down to the level of individual claims and not for the entire case viewed as a whole.") vacated on other grounds 555 U.S. 1083; *Kenney v. United States*, No. 08-401, 2010 WL 147212, at *2-3 (E.D. Ky. Jan. 8, 2010) (holding that the scope of employment test should be applied to "acts or incidents.").

    A close examination of the alleged breaches in the amended complaint is helpful. Counts I, II, and III of the amended complaint are pled virtually identically, they just advance different legal theories, with the first count pled as medical malpractice, the second count pled as ordinary negligence, and the third count pled as medical battery.[1] Cholewa alleged that the United States and Dr. Robinson breached the standard of care in the following ways; after each alleged breach, the

---

[1] The Court already dismissed claims relating to any negligent hiring, retention, or supervision of Dr. Robinson. *See Cholewa v. United States*, 581 F. Supp. 3d 871, 884 (E.D. Mich. 2022).

13

government appends which Defendant that claim should proceed against, in [*italicized bracketed*] text:

    a. failed to obtain an accurate and pertinent history [*the government concedes that this alleged breach is within scope, and this claim should proceed to trial against the government*];

    b. failed to obtain necessary referrals in a timely manner, when indicated [*same*];

    c. failed to properly document patient sessions and therapeutic measures involving the patient [*same*];

    d. failed to refrain from initiating or encouraging romantic and emotional involvement with a patient who is known to require psychological and psychiatric assistance [*this alleged breach is outside the scope of Dr. Robinson's employment as a matter of law, and should proceed against her individually*];

    e. failed to refrain from initiating physical contact of a sexual nature with a patient who is known to require psychological and psychiatric assistance [*outside scope, Dr. Robinson should be Defendant*];

    f. to refrain from characterizing to a patient romantic emotional connection with that patient, physical contact of a sexual nature with that patient, or both, as legitimate psychiatric or therapeutic measures [*outside scope, Dr. Robinson should be Defendant*];

    g. failed to refrain from exploiting the power differential she enjoyed over the patient by virtue of his trusting reliance upon her stated goal of assisting him with his underlying psychological conflicts [*outside scope, Dr. Robinson should be Defendant*];

    h. failed to discontinue the professional and therapeutic physician patient relationship immediately upon her feeling the impulse to act upon feelings of emotional connection, physical attraction, or

both, toward a patient such as Plaintiff [*outside scope, Dr. Robinson should be Defendant*];

i. failed to refer Plaintiff to an alternative psychiatrist within the facility or elsewhere immediately upon her feeling the impulse to act upon feelings of emotional connection, physical attraction, or both, toward a patient such as Plaintiff [*outside scope, Dr. Robinson should be Defendant*];

j. failed to refrain from violating MCL 720.520e, which defines criminal sexual conduct in the fourth degree [*outside scope, Dr. Robinson should be Defendant*];

k. failed to refrain from touching a patient in a way unwelcome and offensive to the patient [*outside scope, Dr. Robinson should be Defendant*]; and

l. failed to fulfill other duties that may become known during the course of discovery in this matter.

(ECF No. 9, Amend. Compl., PageID.62-63).

As can be seen from the above, a clear demarcation can be drawn between claims involving sexual contact (outside scope) and claims involving no sexual contact (referrals and charting, within scope). Using the "incident by incident" approach, the Court should permit Cholewa's claims about sexual misconduct to proceed against Dr. Robinson, if the Court finds that sexual contact occurred.

## CONCLUSION

If the Court credits Cholewa's testimony concerning sexual contact, then those claims should proceed to trial against Dr. Robinson individually. If the Court does not credit Cholewa's testimony concerning sexual contact, then the Court should revisit its summary judgment ruling and dismiss those claims from the case, while also dismissing Dr. Robinson as a Defendant. Cholewa's claims for negligent charting and failure to give referrals should proceed to trial against the government either way.

                                        **DAWN N. ISON**
                                        United States Attorney

                                        */s/ Bradley H. Darling*
                                        Bradley H. Darling (P63176)
                                        Assistant United States Attorney
                                        211 W. Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        Phone: (313) 226-9137
                                        E-mail: bradley.darling@usdoj.gov

Dated: December 6, 2024

## CERTIFICATION OF SERVICE

I hereby certify that on December 6, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Vernon R. Johnson
Samuel H. Pietsch
***Attorneys for Plaintiff Trey Cholewa***

David A. Nacht
***Attorney for Defendant Dr. Jennifer Robinson***


 */s/ Bradley H. Darling*
Bradley H. Darling (P63176)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
Phone: (313) 226-9137
E-mail: bradley.darling@usdoj.gov