UNITED STATES DISTRICT COURT
Eastern District of Michigan
Southern Division

TREY CHOLEWA,
     Plaintiff,

v

UNITED STATES OF AMERICA and
JENNIFER ROBINSON, M.D.,

     Defendants.

Case No. 2:19-cv-12190-GAD-SDD
Hon. Gershwin A. Drain

---

Ven R. Johnson (P39219)
Paul F. Doherty (P36579)
Samuel H. Pietsch (P30173)
VEN JOHNSON LAW, PLC
Attorneys for Plaintiff
535 Griswold St., Suite 2632
Detroit, MI  48226
(313) 324-8300; (313) 324-8301 – fax
spietsch@venjohnsonlaw.com

Bradley Darling (P63176)
U.S. Department of Juice
Attorneys for Def. U.S. Justice
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9137
bradley.darling@usdoj.gov

David A. Nacht (P47034)
NACHT LAW, PC
Attorneys for Def. Robinson
101 N. Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
dnacht@nachtlaw.com

---

## PLAINTIFF'S PROPOSED FINDINGS OF FACT

**NOW COMES** Plaintiff, Troy Cholewa, by and through his counsel VEN

JOHNSON LAW, PLC, and says as his Proposed Findings of Fact the following:

**INTRODUCTION**

On October 15, 2024, the Court held an evidentiary hearing to permit fact finding with respect to which claims Plaintiff has brought against Defendant Robinson are within the scope and course of her employment with Defendant United States of America.

The Court heard testimony from these witnesses: Plaintiff Trey Cholewa, Defendant Jennifer Robinson and Dr. Nicole Stromberg (Defendant Robinson's Supervisor at the VA Hospital for a substantial portion of the timeframe with which this case is involved).  Counsel for all parties were present and participated in the evidentiary hearing. Plaintiff sought to, but was precluded, to present expert testimony that certain acts or omissions of Defendant Robinson, even if they involved some "sexual" overtone or act were, nonetheless, evidence of malpractice and were committed within the scope of Defendant Robinson's employment with the VA.  Given the rulings of the Court, Plaintiff, instead, introduced a description of the counselling sessions between Plaintiff and Defendant Robison and established, as described in detail below, that most session, while malpractice might have been committed, did not involve any overt "sexual" contact, talk, etc.  Then for those limited sessions that did involve overt "sexual" contact, talk, etc., all such sessions also included "counselling" time during which nonsexual issues were discussed.

At the conclusion of the hearing, the Court ordered each of the parties to submit proposed findings of fact. Plaintiff's proposals are stated below.

1.      Plaintiff Trey Cholewa was a member of the United States Marine Corps who served 5 tours, including 4 in Iraq and Afghanistan. His duties included serving as machine gunner, trainer and advisor. (Evidentiary Hearing transcript pg. 8, lines 13-19; hereinafter "TR").

2.      Plaintiff received promotions while in the Marine Corps, eventually reaching the rank of sergeant. (TR, pg. 23).

3.      Plaintiff was wounded in combat and was medically discharged from the Marine Corps in March 2015 due to chronic pain from blast injuries, and post-traumatic stress disorder. Plaintiff is 100% and suffers from psychiatric disabilities including PTSD. (TR pg. 9).

4.      In 2015, Plaintiff returned to the Detroit area where he began treatment at the Veterans Administration Hospital for treatment of physical injuries and mental health problems related to his combat service where he eventually came under the care of Dr. Robinson. (TR pg. 40).

5.      From September 16, 2015, through August 1, 2017, Plaintiff had 29 documented patient visits with Dr. Robinson at the VA Hospital (Plaintiff's Exhibit 2 – chart of recorded treatment dates).

6.     All contact between the Plaintiff and Dr. Robinson occurred in her office at the John Dingell Veterans Administration Hospital (TR pg. 42).

7.     From the date of initiation of treatment with Dr. Robinson, September 16, 2015, through February 28, 2017, all office visits between Plaintiff and Defendant consisted of "routine counseling sessions". (TR pgs. 44-45).

8.     For all counselling sessions between September 2016 through February 2017, there was no "sexual" contact, talk, or sexually related activity initiated by Dr. Robinson. (TR pg. 44).

9.     In March 2017, Defendant began offering embraces to Plaintiff at the conclusion of the therapy sessions as a supportive gesture. Plaintiff did not consider these to be overtly sexual acts.  Further, for those sessions where such "supportive" gestures were made by Dr. Robinson, the vast majority of the time the two spent together involved routine counselling related to Plaintiff's PTSD and related problems. (TR pgs. 45-46).

10.     In addition to office visits for which there is a record, there were unannounced visits by Plaintiff with Dr. Robison at her VA office.  Such visits were encouraged by Dr. Robinson as a "walk in". (TR pg. 50).

11.     Beginning approximately March 2017, Dr. Robinson developed a system with Plaintiff whereby he could bypass the check-in desk in the Department of Psychiatry and go directly to her office. Dr. Robinson would leave her office door

cracked if she was available and closed if she was not available to see Plaintiff. (TR pgs. 52-53).

12.     Much of the content of the therapy sessions consisted of Plaintiff discussing his marital difficulties with Defendant Robinson. (TR pgs. 53-54).

13.     Beginning in May 2017, in addition to conducting conventional doctor/patient sessions with Plaintiff, Defendant escalated physical advances toward him from "friendly" hugs to shoulder rubbing and kissing, which typically occurred toward the end of a session. (TR pg. 55).  May 16, 2017, is the first session that Plaintiff considered involved "sexual contact" initiated by Defendant. (TR pg. 56).

14.     The pattern of therapy sessions involving conventional counselling and ending with back rubs, shoulder rubs, embraces and passionate kissing continued from May 2017 through August 1, 2017. (TR pg. 58).

15.     Those visits that included sexual content included conventional talk therapy between doctor and patient as well. (TR pg. 58).

16.     At one counseling session held after June 2017 but before the last visit on August 1, 2017, at the conclusion of the talk therapy session, Defendant made an overt advance toward Plaintiff, touching his genitals and kissing them. (TR pgs. 60-61).

17.     During the period of unannounced drop in visits (June 2017 to August 2017) Defendant conducted conventional talk therapy sessions with Plaintiff at the VA Hospital without any "sexual conduct". (TR pg. 61).

18.     In August 2017, Plaintiff made a tape recording of a discussion with Dr. Robinson during which she did not deny the claims of sexual conduct, and during which she professed to be in love with him. (TR pg. 62).

19.     On August 11, 2017, Plaintiff terminated psychiatric services with Dr. Robinson at the VA Hospital. (TR pgs. 62-63).

20.     There was no further contact between Plaintiff and Defendant after the August 11, 2017, tape recording was made. (TR pg. 63).

21.     Every session where there was sexual contact initiated by Defendant toward Plaintiff also involved routine therapeutic content. (TR pg. 63).

22.     Dr. Nicole Stromberg was the Chief of Psychiatry at John Dingell VA Hospital from 2013 until April 2020. (TR 116). She was Defendant Dr. Robinson's clinical supervisor at the John Dingell VA Hospital during the entire period during which Defendant Robinson was treating Plaintiff Cholewa, until Dr. Stromberg left the VA Hospital in April 2020.

23.     Dr. Robinson was a Board-Certified Psychiatrist who completed her residency at Wayne State University Medical Center and was then employed as a full-time psychiatrist at the John Dingell VA Medical Center in 2015. (pg. 86).

6

24.     Dr. Robinson invoked her Fifth Amendment privilege with respect to all questions involving whether she was acquainted with Plaintiff, ever spoke with Plaintiff, ever provided care and treatment to Plaintiff or had any type of physical contact or relationship with him. (TR pgs. 89-96)

25.     Defendant was investigated by the VA Hospital after it received Plaintiff's Notice of Administrative tort claim in November 2018 (TR pg. 100).

26.     In her statement to Dr. Stromberg during the administrative hearing into the allegations made in that notice, Dr. Robinson denied that she (Dr. Robinson) had "crossed any personal boundaries" with Plaintiff. Dr. Robinson also stated that Plaintiff had not violated any personal boundaries with her. (TR pg. 104).

27.     When asked by Dr. Stromberg during the investigation whether Defendant had crossed any professional boundaries with Plaintiff, her response was that she "should not have been as accessible and had more structure in our meetings and been sterner about his being in a program rather than trying to deal with him on my own." (TR pg. 104-105).

28.     Defendant denied during the VA investigation having committed any sexual misconduct toward Plaintiff. (pg. 105, line 17-20)

29.     As a result of the investigation by Dr. Stromberg and others, Defendant was not terminated from employment at the VA Hospital. (TR pg. 108).

30.     Defendant was shifted from treating outpatients to treating inpatients because of the reprimand she received as a result of the April 2018 investigation. (TR pg. 108).

31.     Defendant was terminated from employment by the VA in August of 2021. (TR pg. 109).

32.     Dr. Stromberg agreed that Dr. Robinson was employed by the VA Hospital and was treating Plaintiff in the course and scope of her employment in the psychiatrist-patient setting. (TR pg. 123).

33.     Dr. Stromberg found no evidence of any doctor/patient relationship outside the VA premises between Plaintiff and Defendant. (TR pg. 123).

34.     Dr. Stromberg testified that all contact between Plaintiff and Defendant happened on the 7th floor Psychiatric Unit at the VA Hospital. (TR pg. 124).

35.     The issues of transference and countertransference in the psychiatric setting were not before the Court in this evidentiary hearing. (TR pg. 128).

36.     Dr. Stromberg's investigation found that there was a higher volume of phone calls between Plaintiff and Defendant than with any other patient, that a greater proportion of them were initiated by Defendant, and none of them were documented. (TR pg. 130-131).

37.     Dr. Stromberg testified that patients would not have been able to go directly to the doctor's office, unless someone let the patient in, because the doors were kept locked for security reasons. (TR pg. 132).

38.     The USA admits that Plaintiff's negligent charting claims regarding documentation of therapeutic appointments, and the failure of Dr. Robinson to make appropriate clinical referrals for Plaintiff on a timely basis are properly brought against the government and occurred within in Dr. Robison's scope of employment. (TR pg. 144).

**PLAINTIFF'S PROPOSED FINDINGS:**

1.     All in-person contact between Plaintiff and Defendant occurred at the John Dingell Veterans Administration Hospital in Detroit between September 16, 2015, and August 2017.

2.     Plaintiff was a patient at the John Dingell Veterans Administration Hospital in Detroit between September 16, 2015, and August 2017.

3.     Dr. Robinson was an employee of the John Dingell Veterans Administration Hospital in Detroit between September 16, 2015, and August 2017.

4.     Plaintiff was a patient of Dr. Robinson and of the John Dingell Administration Hospital in Detroit between September 16, 2015, and August 2017.

5.      There were 29 office appointments at the John Dingell Veterans Administration Hospital between Plaintiff and Defendant from September 16, 2015, to August 2017.

6.      Defendant was providing psychiatric treatment and services to Plaintiff within the course and scope of her employment. between September 16, 2015, and August 2017.

7.      Between September 16, 2015, through February 2017 there was no overt sexual contact or conduct initiated by Dr. Robinson toward Plaintiff during the treatment sessions.

8.      Beginning in March 2017, in addition to routine counseling, Defendant began including embraces to Plaintiff at the conclusion of otherwise standard therapy sessions.

9.      Beginning in May 2017, Defendant escalated physical advances toward Plaintiff in ways considered by Plaintiff to overt.

10.     On or about August 1, 2017, at the conclusion of a standard psychotherapy counseling session, Defendant initiated kissing and genital touching of Plaintiff for the first time.

**PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW:**

Defendant Robinson's Petition for Certification should be granted because she, if not for the totality of the relationship, for all conduct that was not overtly

sexual, was acting within the scope of her employment with the VA.  The Westfall Act clearly states that "[t]he Attorney General shall defend any civil action or proceeding brought in any court against any employee of the Government or his estate." 28 U.S.C. § 2679(c).

Respectfully submitted,

**VEN JOHNSON LAW, PLC**

By: */s/ Paul F. Doherty*
Paul F. Doherty (P36579)
Samuel H. Pietsch (P30173)
Ven R. Johnson (P39219)
Attorneys for Plaintiff
535 Griswold Street, Suite 2600
Detroit, Michigan 48226
(313) 324-8300
pdoherty@venjohnsonlaw.com
spietsch@venjohnsonlaw.com

Date:  December 6, 2024

---

**PROOF OF SERVICE**

The undersigned certifies that on December 6, 2024 she served a copy of the foregoing documents upon all interested parties along with this Proof of Service via the E-Filing System and hereby declares under the penalty of perjury that the foregoing is true to the best of my knowledge, information and belief.

*/s/  Marlo S. Hunter*
**MARLO S. HUNTER**