UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TREY CHOLEWA,

Plaintiff,

Case No.: 19-cv-12190

v.                                                    Hon. Gershwin A. Drain

JENNIFER ROBINSON, M.D. and
UNITED STATES OF AMERICA,

Defendants.

_____/

**THE COURT'S FINDINGS OF FACT THAT DR. ROBINSON ENGAGED IN A ROMANTIC AND SEXUAL RELATIONSHIP WITH PLAINTIFF, AND ORDER GRANTING IN PART AND DENYING IN PART DR. ROBINSON'S PETITION FOR SUBSTITUTION AND REPRESENTATION BY THE UNITED STATES PURSUANT TO 28 U.S.C. § 2679(d)(3) [ECF No. 58]**

## I.      INTRODUCTION

Plaintiff Trey Cholewa, a disabled veteran of the United States Marines, began receiving mental health treatment from Defendant Dr. Jennifer Robinson, a psychiatrist at the John D. Dingell Department of Veterans Affairs Medical Center ("VA Center") in Detroit, for his post-traumatic stress disorder and other mental health issues. During the course of their doctor-patient relationship, Plaintiff alleges that Dr. Robinson commenced an inappropriate emotional, romantic, and sexual relationship with him. In 2019, Plaintiff commenced this lawsuit against Dr.

1

Robinson and the United States, alleging medical malpractice, ordinary negligence, and medical battery.

Dr. Robinson petitioned the Court to certify under the Westfall Act that she was acting within the scope of her employment. *See* 28 U.S.C. § 2679; ECF No. 58. Such a certification would entitle her, as a federal employee, to immunity from suit and would substitute the United States as the party defendant in her place. *See id.* However, the Court denied Dr. Robinson's petition, finding that if she engaged in the acts Plaintiff alleged, she was acting outside the scope of her employment as a matter of law. On interlocutory appeal, the Sixth Circuit vacated and remanded, stating that the Court was also required to make *factual* findings to determine whether Dr. Robinson actually committed the acts that Plaintiff alleged.

The Court held an evidentiary hearing on this issue. For the reasons that follow, the Court concludes that Dr. Robinson engaged in an inappropriate emotional, romantic, and sexual relationship with Plaintiff while he was her patient. The Court GRANTS Dr. Robinson's petition as to the non-romantic and non-sexual acts alleged by Plaintiff, and DENIES Dr. Robinson's petition as to the romantic and sexual acts alleged by Plaintiff.

## II.    LEGAL FRAMEWORK

The Federal Employees Liability Reform and Tort Compensation Act, otherwise known as the Westfall Act, "immunizes United States employees from

liability for their 'negligent or wrongful act[s] or omission[s]… while acting within the scope of [their] office or employment.'" *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993) (quoting 28 U.S.C. § 2679(b)(1)); *see also RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1142 (6th Cir. 1996). The Attorney General certifies whether a federal employee was acting within the scope of her employment at the time of the incident out of which the plaintiff's claim arose. 28 U.S.C. § 2679(d)(1). If the Attorney General so certifies, the United States is substituted for the federal employee as the party defendant and the Federal Tort Claims Act is the sole avenue of recovery for the plaintiff. *Id.*(d)(1), (d)(4). If the Attorney General refuses to certify, the federal employee may then petition the court to certify that she was acting within the scope of her office or employment. *Id.*(d)(3).

In determining a federal employee's scope of employment, the court applies "the law of the state where the conduct occurred." *Dolan v. United States*, 514 F.3d 587, 593 (6th Cir. 2008) (quoting *RMI Titanium Co.*, 78 F.3d at 1143). The court must also, if necessary, "identify and resolve disputed issues of fact necessary to its decision before entering its order." *Singleton v. United States*, 277 F.3d 864, 870 (6th Cir. 2002) (overruled on other grounds by *United States v. Wong*, 575 U.S. 402 (2015)); *Dolan*, 514 F.3d at 593. The party seeking review of the Attorney General's decision "bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a

3

preponderance of the evidence." *Green*, 8 F.3d at 698; *Feldheim v. Turner*, 743 F.

Supp. 2d 551, 556–57 (E.D. Va. 2010); *Becker v. Fannin Cnty., Ga.*, No. 2:09-CV-

00047-RWS-SSC, 2012 WL 3113908, at *8 (N.D. Ga. July 3, 2012).

## III.   BACKGROUND

Plaintiff is a veteran of the United States Marine Corps who served five tours

in the Middle East and saw active combat on four of those tours. ECF No. 56-2,

PageID.777–78. Plaintiff was medically discharged from the Marine Corps in May

2015. *Id.* at PageID.724. The Veterans Administration ("VA") diagnosed Plaintiff

with post-traumatic stress disorder ("PTSD"), sleep apnea, migraines, and various

physical problems. ECF No. 56-3, PageID.816. Considering Plaintiff's mental and

physical conditions, the VA determined that Plaintiff was 100% disabled. ECF No.

139, PageID.4789.

Dr. Robinson, who was a board-certified psychiatrist at the VA Center in

Detroit, began treating Plaintiff for his mental health in September 2015. ECF No.

57-2, PageID.1450. In November 2018, Plaintiff filed an administrative tort claim

against the VA, alleging that Dr. Robinson had made inappropriate romantic,

physical, and sexual advances toward him and had initiated sexual contact with him

during their therapy appointments beginning in March 2017 and going until he

stopped treating with her in August 2017. ECF No. 56-8, PageID.1080. Dr. Robinson

denied all such claims. ECF No. 56-9, PageID.1089.

4

Dr. Nicole Stromberg, the Chief of Staff for Mental Health at the VA Center, conducted a factfinding investigation to determine if Plaintiff's claims could be corroborated and if Dr. Robinson should be permitted to continue her patient care duties. *Id.* Dr. Stromberg noted that "[s]upporting evidence" of Plaintiff's claims "was largely unavailable." *Id.* at PageID.1090. On the other hand, Dr. Stromberg found that Dr. Robinson had made three times more calls to Plaintiff than any other patient and had failed to document all her encounters with Plaintiff. *Id.* at PageID.1091. Dr. Stromberg also found that Dr. Robinson's refusal to produce redacted personal phone records or answer any questions about Plaintiff "create[d] a founded suspicion that the records harbor information suggestive of an improper relationship." *Id.* Dr. Stromberg ultimately recommended to the VA Professional Standards Board that Dr. Robinson be relieved of all patient duties. *Id.*

Initially, the VA Professional Standards Board did not adopt this recommendation and instead gave Dr. Robinson a reprimand, placed her on "focused professional practice evaluation," and transferred her from outpatient to inpatient care. ECF No. 56-10, PageID.1103; ECF No. 56-11; ECF No. 56-7, PageID.1028–29. During the litigation, however, Plaintiff produced a few audio recordings which he claimed were taken during his therapy sessions with Dr. Robinson. *See generally* ECF No. 56-12. In one such recording, the male voice (allegedly Plaintiff) discussed his sexual and romantic relationship with Dr. Robinson, and the female voice

(allegedly Dr. Robinson) tells the male voice "I think I happen to be in love with you." *Id.* at PageID.1124. After the production of these recordings, the VA Professional Standards Board voted unanimously to revoke Dr. Robinson's clinical privileges. ECF No. 56-13.

Plaintiff filed the instant lawsuit in July 2019 against the United States and Dr. Robinson.[1] *See* ECF No. 1. Plaintiff alleges medical malpractice, ordinary negligence, and medical battery. *See* ECF No. 9. Plaintiff's claims are predicated on the alleged inappropriate romantic and sexual relationship with Dr. Robinson, as well as Dr. Robinson's failure to maintain an accurate clinical history, to properly document patient sessions and therapeutic measures, and to make timely referrals when indicated. *See id.*

Seeking immunity from liability under the Westfall Act, Dr. Robinson petitioned the Attorney General to certify that she was acting within the scope of her employment during her doctor-patient relationship with Plaintiff. ECF No. 19, PageID.328. The Attorney General refused certification. *Id.* Thereafter, Dr. Robinson petitioned the Court for judicial review of the Attorney General's decision. *Id.* In the petition before the Court, Dr. Robinson asserted that even if Plaintiff's

---

[1] Initially, only the United States was named as a defendant, but Plaintiff amended his complaint to add Dr. Robinson. *See* ECF No. 1; ECF No. 9.

factual allegations were true,[2] she was always acting within the course and scope of her employment as a VA psychiatrist during her relationship with Plaintiff.

Dr. Robinson argued that failing to obtain an accurate history, to make necessary referrals, and to properly document her therapy sessions with Plaintiff are all a part of her provision of therapy to Plaintiff, "no matter how poorly rendered," so these failings were within the scope of her employment. *Id.* at PageID.335. Dr. Robinson also argued that psychiatrists are required to "manage the therapeutic relationship and maintain healthy physical and emotional boundaries" with their patients, and although she "grossly mismanaged" that therapeutic relationship, her attempt to do so was still within the scope of her employment.[3] *Id.* However, the Court denied Dr. Robinson's petition without prejudice. The Court held that discovery was needed to develop "a full factual record on the details of [Dr.

---

[2] Notably, Dr. Robinson did not concede that Plaintiff's allegations were true. ECF No. 19, PageID.328 n.1.

[3] Dr. Robinson explained at length that a patient may have an emotional reaction to his psychiatrist and project his feelings onto her. This process is called "transference." ECF No. 19, PageID.336. Psychiatrists must manage those projections by "avoiding emotional involvement" and "assist[ing] the patient in overcoming problems" in a process called "countertransference." *Id.* Although Dr. Robinson concedes that she mismanaged this process (if Plaintiff's claims are true), she nevertheless claims that such mismanagement was within the scope of her employment. *Id.* at PageID.337. This is because "Plaintiff's allegations of sexual impropriety cannot be divorced from Dr. Robinson's therapeutic relationship with Plaintiff or the scope of her employment as a psychiatrist." *Id.*

Robinson's] therapy[,]" considering Plaintiff's sexual *and* non-sexual claims against Dr. Robinson. ECF No. 31, PageID.461, 470.

The parties engaged in discovery. At the close of discovery, the United States and Dr. Robinson both filed motions for summary judgment. *See* ECF No. 56; ECF No. 57. Dr. Robinson also renewed her petition for substitution under the Westfall Act. ECF No. 58.

In ruling on the parties' summary judgment motions, the Court held that there was a "genuine dispute" over whether Plaintiff and Dr. Robinson were involved in a romantic or sexual relationship. ECF No. 80, PageID.4442. The Court analyzed the competing evidence at issue, noting that some parts of the record corroborated Plaintiff's deposition testimony while others did not. Ultimately, the Court refused to "make credibility determinations about Plaintiff's testimony" where Plaintiff's version of events was "not blatantly contradicted by the record." *Id.* at PageID.4453.

Thereafter, the Court denied Dr. Robinson's petition for substitution. *See* ECF No. 92, PageID.4476. First, the Court noted that it was permitted to hold an evidentiary hearing to resolve a petition for certification and substitution under the Westfall Act, but that the parties agreed that no evidentiary hearing was necessary. Therefore, the Court did not hold a hearing. *Id.* at PageID.4484 n.3. Second, the Court stated that there was no Michigan law on point "involving a mental health professional mismanaging transference, leading her to engage in sexual misconduct

8

with her patient under the guise of treatment." *Id.* at PageID.4486. However, the Court concluded that cases applying Michigan law to similar issues "indicate that the Michigan Supreme Court would find Dr. Robinson was acting outside the scope of her employment as a matter of law" if she participated in a romantic or sexual relationship with Plaintiff. *Id.* at PageID.4486. Thus, the Court resolved as a matter of law that Plaintiff's allegations, if true, were outside of the scope of Dr. Robinson's employment. The Court did not resolve the factual issue of whether Dr. Robinson engaged in the alleged acts.

Dr. Robinson filed an interlocutory appeal of the Court's order denying her Westfall immunity. ECF No. 95. The Sixth Circuit vacated and remanded the Court's ruling on Dr. Robinson's petition. *Cholewa v. United States*, No. 23-1278, 2024 WL 869550, at *4 (6th Cir. Feb. 29, 2024). The Sixth Circuit stated that its "review in this appeal is frustrated by a basic problem: there are no factual findings in the record before us." *Id.* at *3. The Sixth Circuit noted that in making a Westfall Act certification decision, a district court is required to "*resolve* disputed issues of fact necessary to its decision before entering its order." *Id.* (quoting *Osborn v. Haley*, 422 F.3d 359, 364 (6th Cir. 2005)) (emphasis in original). Thus, the Sixth Circuit held that the Court erred in failing to resolve the factual issues in the case, and it remanded the case for further proceedings to make those determinations. *Id.* at *4.

The Court held an evidentiary hearing on October 15, 2024, to assist in making the factual determination of whether Dr. Robinson engaged in a romantic or sexual relationship with Plaintiff. After the hearing, the parties submitted proposed findings of fact. ECF No. 141; ECF No. 142; ECF No. 143. The factual questions are currently before the Court. The determination of whether Dr. Robinson did or did not engage in the alleged romantic and sexual acts with Plaintiff determines whether, and to what extent, Westfall immunity is appropriate.

## IV.   FINDINGS OF FACT

### a. Parties' Proposed Findings of Fact

#### i.   *Plaintiff's Proposed Findings of Fact*

Plaintiff proposes that the Court find that Dr. Robinson was acting within the scope of her employment for the duration of their doctor-patient relationship.[4] ECF No. 143, PageID.5027–28. Plaintiff argues that the evidence shows that from September 2015 to February 2017, Plaintiff and Dr. Robinson engaged in routine counseling sessions during which there was no overt sexual contact or conduct between them. *Id.* at PageID.5027. In March 2017, the evidence shows that Dr. Robinson began hugging Plaintiff as a supportive gesture. *Id.* at PageID.5021. In

---

[4] Notably, both Plaintiff and Dr. Robinson agree that the United States should be substituted as party defendant. The United States is the only party that contests substitution.

May 2017, their physical interactions developed into shoulder rubbing and kissing at the end of their therapy sessions. *Id.* at PageID.5022. In August 2017, the evidence shows that Dr. Robinson touched and kissed Plaintiff's genitals. *Id.* However, even when Dr. Robinson made sexual advances toward Plaintiff during a session, the rest of the session involved "routine therapeutic content." *Id.* at PageID.5023. In conclusion, Plaintiff argues that Dr. Robinson should be given immunity because all innocent and non-overtly sexual acts—which predominated for most of their relationship—were within the scope of her employment with the VA. *Id.* at PageID.5028.

### ii.  Dr. Robinson's Proposed Findings of Fact

Dr. Robinson proposes that the romantic and sexual conduct that Plaintiff alleges did not occur, and that therefore she is entitled to Westfall certification. ECF No. 142, PageID.5007. Dr. Robinson attacks Plaintiff's credibility in numerous ways, citing inconsistencies in his story throughout the litigation, his admittedly faulty memory, and the lack of corroborating evidence for his claims. *Id.* at PageID.5007–09. Dr. Robinson dismisses the audio recording of her telling Plaintiff she might be in love with him as "reflective listening" to what Plaintiff was telling her at the time, not as an expression of romantic feelings. *Id.* at PageID.5009. Dr. Robinson also argues that the Court should not make an adverse inference against her for invoking her Fifth Amendment right against self-incrimination because of

11

the lack of independent evidence of Plaintiff's accusations. *Id.* at PageID.5010–11. In sum, Dr. Robinson concludes that the record only demonstrates that her conduct during her clinical relationship with Plaintiff was within the scope of her employment. *Id.* at PageID.5013.

### iii. United States' Proposed Findings of Fact

The United States concedes that Plaintiff's non-romantic claims against Dr. Robinson—namely, failure to obtain an accurate and pertinent history, to obtain necessary referrals, and to document patient sessions and therapeutic measures—are within the scope of Dr. Robinson's employment, so the United States agrees to substitute Dr. Robinson for those claims. ECF No. 141, PageID.4957. The United States asserts that it takes no position on the credibility of Plaintiff's testimony about the sexual and romantic allegations. *Id.* at PageID.4954. The United States notes, however, that Dr. Robinson offered no testimony to rebut Plaintiff's claims and that the Court may draw an adverse inference against Dr. Robinson for her refusal to testify. *Id.* at PageID.4955. The United States argues that the Court should apply Westfall Act certification incident-by-incident and refuse to certify any of Plaintiff's claims involving inappropriate romantic, emotional, or sexual involvement. *Id.* at PageID.4957–58.

### b. The Evidence

#### i. *Direct Evidence*

The only piece of direct evidence that Dr. Robinson engaged in some sort of inappropriate relationship with Plaintiff is the audio recording. Plaintiff allegedly recorded an interaction with Dr. Robinson at a counseling session on August 11, 2017. *See* ECF No. 139, PageID.4842. That recording begins with the following exchange:

> MALE (allegedly Plaintiff): You're f***ing with my head so bad.
> FEMALE (allegedly Dr. Robinson): Okay. Just forget I even said it.
> MALE: No.
> FEMALE: Just forget it. Just forget it. I'm going to do –
> MALE: Maybe I should. I should probably go see someone else. You can – we're going to talk like that. I feel like – I don't know. Seriously, I think you're f***ing with my head.
> FEMALE: I'm not trying to –
> MALE: You come over here and give me a massage and kiss me and –
> FEMALE: (Inaudible).
> MALE: Because why?
> FEMALE: Because I think I happen to be in love with you. That might have something to do with it.
> MALE: Say that? You might be what?
> FEMALE: I don't know. I don't know.
> MALE: Say it again then.
> FEMALE: No, no. You know what I said.
> MALE: You might be in love with me?
> FEMALE: I might be.
> MALE: You might be?
> FEMALE: Yes. okay?...

13

ECF No. 141-3, PageID.4967.

After this exchange, Plaintiff begins discussing how his emotions are "all over the place" because of his and Dr. Robinson's relationship. *Id.* at PageID.4968. Plaintiff explains:

> MALE: … I come here, I have a great doctor/patient relationship – I guess you could say that – where I can tell you things and I feel comfortable with that for once because I – it's hard for me to tell anybody. Like I rarely tell my wife, my brother a lot of things, and those are like obviously people I should be able to tell.
> But something about you, I don't know, because the relationship we have, which is bad but – I don't know. But – and then what you just said gets my head spinning. I don't want to lose you as a doctor, you know? But maybe I should go see someone else.

*Id.* at PageID.4968–69.

Dr. Robinson responds to Plaintiff by stating "Uh huh. So you -- so you agree."

*Id.* at PageID.4969. Plaintiff replies, "Maybe. I don't know." *Id.* Shortly thereafter, the following exchange occurs:

> FEMALE: Trey, I'm not going anywhere, okay? I'll continue to see you as long as you come to me.
> MALE: What?
> FEMALE: I'll continue to see you as long as you're coming to see me.
> MALE: Of course I still want to come and see you.
> FEMALE: Just –
> MALE: I've been through so much with you.
> FEMALE: I know.
> MALE: A lot.
> FEMALE: I know. I just –
> MALE: We have a patient relationship, we have –
> FEMALE: I can't –
> MALE: -- sexual relationship.

14

> FEMALE: Really?
> MALE: Yeah. Can't mess around sexually and intimately and not feel something for someone. Do you – you just said. I don't know if that's a lie, but you just said that you might be falling in love with me. Well?
> FEMALE: I don't – I don't know. I don't know. I don't know.
> MALE: I know, but obviously you're confused too, right?
> FEMALE: Yeah.

*Id.* at PageID.4969–70.

Plaintiff then begins to discuss his mental health symptoms and how he feels "like a horrible person… for all the things that I've ever done." *Id.* at PageID.4970.

Plaintiff continues:

> MALE: … And then I come here and I feel happy because, of course, I don't know, I can look at you, and you smile and give me a massage and kiss me and play with my penis or whatever, but – it's not a joke. It makes me feel amazing. And then I leave here and then I'm right back to feeling like a miserable person.

*Id.* at PageID.4971. Dr. Robinson does not respond before the recording ends.

### ii. Circumstantial Evidence

In Dr. Stromberg's factfinding investigation of Dr. Robinson, she found that there were three times more calls between Plaintiff and Dr. Robinson than there were between any other patient and Dr. Robinson. ECF No. 56-9, PageID.1090. Many of these calls were short, but a "significant" number were over two minutes long. *Id.* Despite claiming that Plaintiff was always in "constant crisis," Dr. Robinson failed

15

to document any of the calls with Plaintiff during the period in question, although she had a practice of documenting phone calls to other patients. *Id.*

Dr. Robinson admitted to Dr. Stromberg that she would allow patients to "pop in" on her frequently. ECF No. 64-11, PageID.3915. She also admitted that there had been occasions where she had failed to document patient encounters, including with Plaintiff. *Id.* at PageID.3915–16. When Dr. Stromberg asked Dr. Robinson if she had ever crossed any professional boundaries with Plaintiff, Dr. Robinson responded that she "should not have been as accessible and had more structure in our meetings." *Id.* at PageID.3917. Dr. Robinson refused to provide Dr. Stromberg with her personal cell phone records (even redacted phone records) when asked for them.

Dr. Stromberg was unsuccessful in finding any other corroborative evidence of an inappropriate relationship between Dr. Robinson and Plaintiff. There was no security footage or entry/exit logs from the parking garage to substantiate the claimed encounters. Most VA employees interviewed by Dr. Stromberg did not even recognize Plaintiff, and none suspected that he and Dr. Robinson were engaged in an inappropriate relationship. *See* ECF No. 141-6. Dr. Robinson never received any complaints about her conduct prior to Plaintiff's complaint. *See* ECF No. 139, PageID.4899.

### iii.    Testimony

During Plaintiff's testimony at the hearing, he discussed his deployments to Iraq and Afghanistan and explained that he was medically discharged from the military in 2015 with a rating of 100% disability. ECF No. 139, PageID.4809–15. After his discharge, he moved from California to Michigan and began mental health treatment through the VA system. *Id.* at PageID.4819–20. Plaintiff asserted that all his visits with Dr. Robinson occurred at the VA Center in Detroit, and that there were therapy sessions that involved "no sexual content whatsoever." *Id.* at PageID.4822–23.

Plaintiff struggled to remember the dates that sexual contact did or did not occur. *Id.* When guided by counsel, Plaintiff testified that to the best of his recollection, there was no sexual contact with Dr. Robinson between September 2015 and February 2017. *Id.* at PageID.4824. Plaintiff testified that around March 2017, Dr. Robinson began initiating the first physical contact with Plaintiff: hugs at the end of the therapy sessions, which Plaintiff considered a "supportive gesture." *Id.* at PageID.4825–26. Plaintiff stated that more overtly romantic physical touch began in May 2017. *Id.* at PageID.4834. The touching included massages, longer and more sensual embraces, and kissing, all of which usually occurred at the end of the session. *Id.* at PageID.4835.

Plaintiff also explained that some sexual contact between himself and Dr. Robinson began around this timeframe. Plaintiff described one instance in detail where he and Dr. Robinson attempted to have sex on her desk after she told him she had a dream about it. *Id.* at PageID.4839. During this interaction, Dr. Robinson allegedly put Plaintiff's hand down her skirt and touched Plaintiff's penis. *Id.* They were interrupted before they could consummate the act when a coworker knocked on Dr. Robinson's door. *Id.* at PageID.4839. Plaintiff explained another instance where Dr. Robinson fondled and kissed his genitals. *Id.* at PageID.4840. Plaintiff also alleged that Dr. Robinson invited him on a trip to Boston so they could be alone together, although he did not attend this trip. *Id.* at PageID.4849. When asked if he could recall any other instances of sexual contact, Plaintiff said no. *Id.* at PageID.4841. However, later in his testimony, Plaintiff stated that there were more than ten instances of sexual touching. *Id.* at PageID.4858.

Plaintiff described how he would make unannounced walk-in visits to the VA Center to see Dr. Robinson. *Id.* at PageID.4830. Plaintiff alleges that Dr. Robinson would tell him to come see her on the days she was taking walk-ins, or would call him when she had free time and knew he was at the VA Center for another appointment. *Id.* at PageID.4832. Dr. Robinson would leave her office door cracked if she was not with a patient or colleague, and Plaintiff claims that his unannounced

18

visits became so frequent that he would bypass the check in desk and go straight to her office. *Id.* at PageID.4833.

During his examination of Plaintiff, counsel for Dr. Robinson indicated there are several reasons to question Plaintiff's credibility. Counsel elicited Plaintiff's confirmation that he has "memory issues as a result of [his] injuries from the service," that he has difficulty "knowing what is real and what is not real," and that he has "sometimes imagined things that are not true." *Id.* at PageID.4788–90. In addition, counsel highlighted the fact that at Plaintiff's deposition, Plaintiff was unable to identify a single date besides August 11, 2017 where Dr. Robinson had allegedly touched him; Plaintiff was only able to give approximate time frames for the dates of abuse when guided by counsel. *Id.* at PageID.4797–98.[5]

During Dr. Robinson's testimony, Dr. Robinson pled the Fifth to any question that implicated her interactions with Plaintiff.

Dr. Stromberg testified that she found no direct evidence that Plaintiff and Dr. Robinson engaged in a romantic or sexual relationship, based on what Dr. Robinson told her, staff member interviews she conducted, clinical documentation, leave records, phone records, CCTV footage, badge swipes, and frequency of contact

---

[5] Counsel also accused Plaintiff of having never before testified about attempting to have sex on Dr. Robinson's desk, despite this being "a pretty big thing." *Id.* at PageID.4851, 4858. However, in his deposition, Plaintiff seemingly did testify about such an attempt. *See* ECF No. 57-2, PageID.1484.

between psychiatrist and patient. *Id.* at PageID.4906. Dr. Stromberg stated that there were no "red flags," as far as Plaintiff's care was concerned, in the chart Dr. Robinson kept for Plaintiff. *Id.* at PageID.4910. Regarding Plaintiff's claim that he would bypass the front desk on the psychiatric floor to go straight to see Dr. Robinson during walk-in visits, Dr. Stromberg clarified that the hallways were locked and that bypassing the front desk would not have been possible without someone letting him in. *Id.* at PageID.4912.

In contrast, Dr. Stromberg found that Dr. Robinson had a higher volume of phone calls with Plaintiff than with other patients, although she clarified that the call volume was not higher than she would expect in general. *Id.* at PageID.4910–11. Dr. Stromberg was also concerned with the fact that none of the calls were documented, noting that a psychiatrist should typically leave a summary note in the chart about the general content of the conversation with the patient or indicate that she was unsuccessful in reaching the patient. *Id.* at PageID.4911.

Counsel for Dr. Robinson elicited testimony from Dr. Stromberg about "reflective listening," which Dr. Stromberg explained is the "process of actively hearing what another is saying and then offering them back the gist of what they're saying as a demonstration that you have been hearing them." *Id.* at PageID.4896.

### c. The Court's Findings of Fact

In reaching its findings of fact, the Court finds it provident to divide the factual findings into three sections: (1) whether the audio recording is a true recording of Plaintiff and Dr. Robinson, (2) whether Plaintiff and Dr. Robinson had a romantic relationship involving kissing and massaging,[6] and (3) whether Plaintiff and Dr. Robinson had sexual contact.[7]

### i. *The Audio Recording Is a True Recording of a Conversation Between Plaintiff and Dr. Robinson.*

Plaintiff presented an audio recording of a male voice and a female voice that he claims belong to himself and Dr. Robinson. ECF No. 139, PageID.4842. Plaintiff's identification of the voices on the audio recording is sufficient to authenticate it. Fed. R. Evid. 901(b)(5). Dr. Robinson had an opportunity at the hearing to confirm or deny that the female voice was her own. ECF No. 139, PageID.4873. Dr. Robinson pled the Fifth in response. *Id.* Dr. Robinson's silence in the face of probative evidence against her permits the Court to draw an adverse inference that the voice on the recording is, indeed, her own. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid

---

[6] By "romantic relationship," the Court is referring to expressed feelings of romance and affection, and physical touch that does not involve the intimate parts of the body.

[7] By "sexual contact," the Court is referring to any acts involving touching of intimate parts of the body.

adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]"); *see also Davis v. Mutual Life Ins. Co. of N.Y.*, 6 F.3d 367, 384 (6th Cir. 1993) ("In a civil case, a party's invocation of the privilege against compulsory self-incrimination gives rise to a legitimate inference that the witness was engaged in criminal activity.").

Contextually, the audio recording itself also supports the conclusion that the voices belong to Plaintiff and Dr. Robinson. It is clear from the context that the male voice is talking to a mental health professional like Dr. Robinson, and the female voice addressed the male voice as "Trey." *See* ECF No. 141-3, PageID.4969. Dr. Robinson was the only mental health professional Plaintiff was treating with at the time. Considering the foregoing, the Court concludes that the audio recording is a true recording of a conversation between Plaintiff and Dr. Robinson.

   ii.   *The Evidence Is Conclusive that Plaintiff and Dr. Robinson Had a Romantic Relationship Involving Massaging and Kissing.*

The Court finds one excerpt from the audio probative that Dr. Robinson was engaged in an inappropriate romantic relationship with Plaintiff and that at some point in time, Dr. Robinson massaged and kissed Plaintiff. In the recording, Plaintiff tells Dr. Robinson that she is "f***ing with [his] head," and continues:

   MALE: You come over here and give me a massage and kiss me
and –
   FEMALE: (Inaudible).
   MALE: Because why?

22

FEMALE: Because I think I happen to be in love with you. That might have something to do with it.
MALE: Say that? You might be what?
FEMALE: I don't know. I don't know.
MALE: Say it again then.
FEMALE: No, no. You know what I said.
MALE: You might be in love with me?
FEMALE: I might be.
MALE: You might be?
FEMALE: Yes. okay?...

ECF No. 141-3, PageID.4967.

The Court finds this passage instructive because, rather than disclaiming Plaintiff's assertion that she massages and kisses him, Dr. Robinson implicitly confirms the statement by replying that it "might have something to do with" the fact that she thinks she is in love with him. *Id.* The Court finds that this exchange is strong and compelling evidence that Dr. Robinson and Plaintiff were involved in a romantic relationship and that massaging and kissing did occur. Furthermore, Dr. Robinson was asked at the hearing whether she had ever kissed, massaged, or professed her love to Plaintiff, and she pled the Fifth in response each time. ECF No. 139, PageID.4873, 4891. The Court draws an adverse inference against Dr. Robinson that she has kissed, massaged, and professed her love for Plaintiff, given her silence in the face of this probative evidence. *Davis*, 6 F.3d at 384–85.

The circumstantial evidence in this case also supports this finding. The circumstantial evidence in this case is that Dr. Robinson had three times more calls to Plaintiff during the relevant period than any other patient, her failure to document

23

any of those calls, and her admission that there were patient encounters with Plaintiff that she failed to document. Dr. Robinson also refused to provide personal cell phone records, even redacted, to support her contention that nothing unseemly occurred between herself and Plaintiff. ECF No. 141-7, PageID.4999–5001. Although this evidence does not exclusively point to a finding that Dr. Robinson was involved in an inappropriate romantic relationship with Plaintiff, the evidence is consistent with such a finding.[8]

### iii.   The Evidence Is Conclusive That Dr. Robinson Had Sexual Contact With Plaintiff.

#### a.   The Audio Recording and Other Circumstantial Evidence Are Suggestive Evidence That Dr. Robinson Had Sexual Contact With Plaintiff

In the audio recording, Plaintiff characterizes his relationship with Dr. Robinson as "sexual," to which Dr. Robinson responds "Really?" *Id.* at PageID.4969–70. Plaintiff continued by stating that a person "[c]an't mess around sexually and intimately and not feel something for someone[,]" and Dr. Robinson

---

[8] Other circumstantial evidence cuts against a finding that a romantic relationship occurred. Plaintiff conceded that he had no interactions with Dr. Robinson outside of the VA Center. *See* ECF No. 143, PageID.5021. Yet, Dr. Stromberg found no employees that had any suspicion that an inappropriate relationship was occurring between Plaintiff and Dr. Robinson. Indeed, only one employee conclusively recognized who Plaintiff was when shown a picture. *See* ECF No. 141-6. Nor has Plaintiff identified any others. However, this contrary circumstantial evidence does not overcome the probative value of the audio recording, the adverse inference against Dr. Robinson for her Fifth Amendment invocation, and the positive circumstantial evidence.

responded "I don't know" three times. *Id.* at PageID.4970. Dr. Robinson then admitted that she is "confused" about her feelings. *Id.* Plaintiff also mentioned in the recording that Dr. Robinson touched his genitals, but the recording ends before Dr. Robinson speaks again. *Id.* at PageID.4971.

These exchanges between Plaintiff and Dr. Robinson are not directly probative of sexual contact, but arguably suggest that the contact occurred because Dr. Robinson engaged in the conversation without denying the truth of what Plaintiff was asserting. Silence in the face of an assertion may be "considered evidence of acquiescence only if it would have been natural under the circumstances to object to the assertion in question." *United States v. Hale*, 422 U.S. 171, 176 (1975) (discussing silence as an admission in the hearsay context). It is conceivable that it would be natural under the circumstances for Dr. Robinson to deny Plaintiff's assertion of their sexual relationship, particularly because she was aware at the time that having a sexual relationship with a patient is a criminal offense. *See* ECF No. 139, PageID.4890. On the other hand, the unique context of the conversation—occurring during a therapy session—may mean that an immediate denial was not warranted under the circumstances. *See id.* at PageID.4898–99 (Dr. Stromberg discussing the appropriateness of therapeutic confrontation during therapy). Considering the foregoing, the recording is suggestive that sexual contact occurred between Plaintiff and Dr. Robinson, but it is not conclusive.

Moreover, the circumstantial evidence in this case—the number of calls to Plaintiff, Dr. Robinson's failure to document their interactions, and Dr. Robinson's refusal to provide even redacted phone records to clear her name—supports the conclusion that some sort of inappropriate relationship occurred, and therefore mildly supports an inference that the sexual allegations may be true.[9]

b.  <u>Plaintiff's Testimony is Not Entirely Credible, But Has Some Credibility.</u>

There are reasons to question Plaintiff's credibility. In his complaint and throughout the litigation, Plaintiff claimed that on every occasion he saw Dr. Robinson between March 2017 and August 2017, she had initiated inappropriate sexual contact. *See* ECF No. 9, PageID.62; ECF No. 57-2, PageID.1487–88. But at the hearing, Plaintiff changed that timeline, stating that any sexually charged conduct only began in May 2017. ECF No. 139, PageID.4836. Plaintiff also contradicted his complaint by stating that sexual conduct did *not* occur during every session. *Id.* at PageID.4841. Indeed, during the hearing, Plaintiff only described two instances of

---

[9] The circumstantial evidence is less compelling to support Plaintiff's sexual allegations than it is to support Plaintiff's claim of a mere romantic relationship involving kissing and massaging. The chances of carrying on a sexual relationship in a doctor's office setting without raising the suspicions of any employees whatsoever is more difficult to believe. Regardless, in a general sense, the number of calls to Plaintiff, Dr. Robinson's failure to document their meetings or interactions, and Dr. Robinson's evasive behavior when answering questions about her relationship with Plaintiff are consistent with the allegation that sexual contact occurred.

sexual contact and stated that he could not recall any others, but then later in his testimony stated that sexual contact occurred more than ten times. Furthermore, in Plaintiff's proposed findings of fact, he proposes the Court to find that Dr. Robinson only began "kissing and genital touching" for the first time on August 1, 2017. ECF No. 143, PageID.5027. This proposed finding contradicts the claim that sexual contact occurred more than ten times, given that Plaintiff also claims that August 11 is the last time Dr. Robinson ever touched him sexually. ECF No. 57-2, PageID.1485; ECF No. 139, PageID.4843, 4858.

In addition, Plaintiff admitted that he has memory problems because of service-related injuries he received during his tours of duty in Iraq and Afghanistan. Plaintiff has struggled to remember dates when not guided by counsel. *See, e.g.*, ECF No. 139, PageID.4797–98, 4808. Plaintiff also admitted that he occasionally has issues discerning between imagination and reality. *Id.* at PageID.4788–90. Plaintiff has been found by his medical providers to "over exaggerate[e]" his medical symptoms. ECF No. 141-7, PageID.4996.

Plaintiff alleged that on occasion, he would bypass check-in at the VA Center to go straight to see Dr. Robinson. ECF No. 139, PageID.4833. Dr. Stromberg clarified, however, that the doors to the hallways with clinician offices were locked, meaning that Plaintiff could not simply go back to see Dr. Robinson without being admitted. *Id.* at PageID.4912. In addition, one of the dates Plaintiff claimed that he

saw Dr. Robinson was on a Sunday. *Id.* at PageID.5000. In her factfinding investigation, Dr. Stromberg noted that the clinic was not open on Sundays. *Id.* Thus, this meeting would have been impossible. Both discrepancies further undercut the reliability of Plaintiff's testimony.

Regardless of the inconsistencies, the Court concludes that Plaintiff's testimony is credible in part and not credible in part. Plaintiff has changed the details of the sexual contact in several ways throughout the litigation, and there are reasons to question Plaintiff's memory and reliability. On the other hand, certain allegations by Plaintiff have remained consistent throughout the litigation.[10] Plaintiff has proven his testimony to be reliable in part, because the audio recording supports his allegations that Dr. Robinson professed her romantic feelings for him, and at the very least kissed and massaged him. Moreover, Plaintiff's general allegation that sexual touching occurred *at some point* is supported by the audio recording and other circumstantial evidence. Thus, the Court finds that Plaintiff's allegation of sexual touching in general is credible, even though some specific details of the allegations lack credibility.

---

[10] Plaintiff has consistently described an incident where Dr. Robinson pulled her "stockings" down and put Plaintiff's hand up her skirt. *See* ECF No. 139, PageID.4839–40; ECF No. 63-3, PageID.2529. Plaintiff has consistently claimed that Dr. Robinson pulled out Plaintiff's penis and kissed it. ECF No. 139, PageID.4840; ECF No. 63-3, PageID.2528. Plaintiff has also consistently alleged an incident where he and Dr. Robinson almost had intercourse on her desk. ECF No. 139, PageID.4839; ECF No. 63-3, PageID.2527.

c. <u>The Court Draws an Adverse Inference Against Dr. Robinson for Invoking Her Fifth Amendment Right</u>

At the hearing, Dr. Robinson pled the Fifth to any question pertaining to whether she had sexual contact with Plaintiff. *See* ECF No. 139, PageID.4871–75; 4890.

When a party to a civil case invokes her right under the Fifth Amendment against compulsory self-incrimination, it "gives rise to a legitimate inference that the witness was engaged in criminal activity." *Davis*, 6 F.3d at 384. The inference is not a "blanket rule that allows adverse inferences to be drawn from invocations of the privilege against self-incrimination under all circumstances." *Lawrence v. Madison Cnty.*, 176 F. Supp. 3d 650, 663 (E.D. Ky. 2016) (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000)). Instead, an "adverse inference can only be draw[n] when independent evidence exists as to the facts about which the party refuses to answer." *In re ClassicStar Mare Lease Litig.*, 823 F. Supp. 2d 599, 621 (E.D. Ky. 2011).

Dr. Robinson argues that there has been no evidence besides Plaintiff's unreliable testimony to prove that sexual contact occurred, so the Court should not draw an adverse inference against her. ECF No. 142, PageID.5009–10. The Court disagrees with Dr. Robinson's characterization of the evidence. As the Court explained, the audio recording is suggestive that a sexual relationship occurred,

29

given Plaintiff's and Dr. Robinson's conversation which referenced sexual acts. Moreover, Plaintiff's testimony is partially credible, considering that the audio has corroborated several of his allegations.

The Court finds it appropriate to make an adverse inference against Dr. Robinson for her refusal to testify. During the VA's factfinding investigation, Dr. Robinson refused to provide her personal phone records, even redacted, to corroborate whether or not she had been communicating with Plaintiff outside of work. Now during this litigation, Dr. Robinson has continued her strategy of silence by pleading the Fifth in response to any question relating to Plaintiff. The Court notes that "[s]ilence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." *Hoxie v. Drug Enf't Admin.*, 419 F.3d 477, 483 (6th Cir. 2005) (quoting *Hale*, 422 U.S. at 176). Under these circumstances, where Dr. Robinson's career is at stake and where an innocent person would rationally desire to clear her name if she could, the Court finds that Dr. Robinson's silence is probative evidence of Plaintiff's allegations.

When the Court considers the evidence against Dr. Robinson and applies an adverse inference against her, the Court concludes that Dr. Robinson has had sexual contact with Plaintiff.

## V.   WESTFALL ACT CERTIFICATION

The Court has concluded that Dr. Robinson had an inappropriate romantic and sexual relationship with Plaintiff while he was her patient at the VA Center. Now the Court must decide whether to grant Dr. Robinson immunity under the Westfall Act for any of Plaintiff's claims.

### i.   *Westfall Act Immunity Applies Incident-by-Incident.*

As an initial matter, Plaintiff argues that Dr. Robinson's petition for substitution should be granted in its entirety because, even though some of her conduct is outside the scope of her employment, most of her interactions with Plaintiff over the course of their clinical relationship were within the scope of her employment. ECF No. 143, PageID.5027–28. In contrast, the United States argues that when a complaint alleges claims that encompass multiple incidents—like Plaintiff's—the scope of employment test should be applied incident-by-incident to determine whether the United States should be substituted as to any alleged *incidents*, rather than claims as a whole.

Plaintiff cited no authority for the proposition that when within-the-scope conduct predominates over outside-the-scope conduct, Westfall Act immunity should be granted as to the whole action. This position contradicts the plain language of the Westfall Act and case law interpreting it. *See* 28 U.S.C. § 2679(b)(1) (stating

31

that immunity is granted to federal employees for torts committed "while acting within the scope of his office or employment[.]"); *Roberts v. United States*, 191 Fed. App'x 338, 341 (6th Cir. 2006) ("[T]he Westfall Act does not immunize federal employees for torts they commit outside the scope of their federal employment; liability for such torts can lie with the individual tortfeasors under state law."). Thus, the Court will not apply blanket immunity to Dr. Robinson merely because most of her relationship with Plaintiff occurred within the scope of her employment.

Although the Sixth Circuit has not directly addressed whether Westfall Act immunity applies incident-by-incident, the Court concludes that this approach is the correct one. In the First Circuit case *Lyons v. Brown*, the plaintiff alleged a single emotional distress claim that embraced "a whole series of individual incidents." 158 F.3d 605, 608 (1st Cir. 1998). The question before the court was whether to determine immunity incident-by-incident or claim-by-claim. The court concluded that courts should apply immunity incident-by-incident, because to hold otherwise would allow plaintiffs to manipulate whether a federal employee defendant receives immunity through the crafty pleading of claims. *See id.* ("Modern pleading is so flexible, and causes of action so numerous, that it is often child's play to combine as part of the same 'claim' remotely related incidents.").

The Eastern District of Kentucky has endorsed the First Circuit's incident-by-incident approach. *See Kenney v. United States*, No. 08-401-JBC, 2010 WL 147212,

32

at *2 (E.D. Ky. Jan. 8, 2010) ("[W]here, as here, an individual claim encompasses multiple incidents, the scope test should be applied to *acts* or incidents."). Moreover, when the instant case was on appeal, the Sixth Circuit stated that one of the issues that "remains to be addressed" is "whether the United States should be substituted as to claims arising from the alleged non-sexual acts by Robinson—failure to properly document treatment, obtain a medical history, or make timely referrals." *Cholewa*, 2024 WL 869550, at *4. Although the Sixth Circuit refers to these "non-sexual acts" as "claims," these are merely incidents that Plaintiff incorporated into every claim that he raises in this action. The Court finds the Sixth Circuit's characterization of this issue as support that if the question were directly before the it, the Sixth Circuit would find that Westfall Act immunity should be applied incident-by-incident. Therefore, the Court will determine which incidents in Plaintiff's claims for which Dr. Robinson is entitled to immunity.

ii.   *The United States is Substituted for Dr. Robinson for All Non-Sexual and Non-Romantic Acts, But Not Substituted for the Sexual and Romantic Acts.*

Plaintiff raises three claims against Dr. Robinson: medical malpractice, ordinary negligence, and medical battery. *See* ECF No. 9. For each of these claims, Plaintiff alleges the following acts that comprise the claims:

   a.   failed to obtain an accurate and pertinent history;
   b.   failed to obtain necessary referrals in a timely manner, when indicated;

33

c.  failed to properly document patient sessions and therapeutic measures involving the patient;

d.  failed to refrain from initiating or encouraging romantic and emotional involvement with a patient who is known to require psychological and psychiatric assistance;

e.  to refrain from initiating physical contact of a sexual nature with a patient who is known to require psychological and psychiatric assistance;

f.  failed to refrain from characterizing to a patient romantic emotional connection with that patient, physical contact of a sexual nature with that patient, or both, as legitimate psychiatric or therapeutic measures;

g.  failed to refrain from exploiting the power differential she enjoyed over the patient by virtue of his trusting reliance upon her stated goal of assisting him with his underlying psychological conflicts;

h.  failed to discontinue the professional and therapeutic physician-patient relationship immediately upon her feeling to impulse to act upon feelings of emotional connection, physical attraction, or both, toward a patient such as Plaintiff;

i.  failed to refer Plaintiff to an alternative psychiatrist within the facility or elsewhere immediately upon her feeling the impulse to act upon feelings of emotional connection, physical attraction, or both, toward a patient such as Plaintiff;

j.  failed to refrain from violating MCL 720.520e, which defines criminal sexual conduct in the fourth degree; [and]

k.  failed to refrain from touching a patient in a way unwelcome and offensive to the patient[.]

*Id.* at PageID.63–64, 72–73; 82–83.

The United States has conceded that Dr. Robinson was acting within the scope of her employment as to the first three acts (a)–(c): failing to obtain an accurate history, failing to obtain necessary referrals, and failing to properly document patient sessions. Therefore, the Court substitutes the United States as to those incidents.

34

The Court also substitutes the United States for Dr. Robinson for acts (g)–(i): failing to refrain from exploiting the power differential she enjoyed over Plaintiff by virtue of his reliance on her stated goal of assisting him; failing to discontinue the professional and therapeutic physician-patient relationship immediately upon feeling the impulse to act upon her feelings of emotional connection, physical attraction, or both; and failing to refer Plaintiff to an alternative psychiatrist immediately upon her feeling the impulse to act upon her feelings of emotional connection, physical attraction, or both. These acts are comparable to the acts for which the United States has conceded to be substituted. They involve no outward romantic or sexual acts toward Plaintiff, but rather Dr. Robinson's failure to do certain non-romantic and non-sexual acts that were a necessary part of her job as a psychiatrist.

The Court has previously determined that if Dr. Robinson engaged in the romantic or sexual acts that Plaintiff alleged, she was acting outside the scope of her employment with the VA as a matter of law. *See* ECF No. 92. Now that the Court has found that Dr. Robinson engaged in romantic and sexual acts with Plaintiff as a matter of fact, the Court must deny her request for Westfall Act certification as to the romantic and sex-related incidents: (d)–(f) and (j)–(k). Therefore, the Court does not substitute the United States as to those incidents.

## VI.    CONCLUSION

For the foregoing reasons, the Court holds:

1. Dr. Robinson engaged in a romantic and sexual relationship with Plaintiff.

2. Pursuant to the Westfall Act, 28 U.S.C. § 2679(b)(1), Dr. Robinson's Renewed Petition for Substitution and Representation by the United States [ECF No. 58] is GRANTED IN PART AND DENIED IN PART. Specifically:

   a. As to Plaintiff's actual non-romantic and actual non-sexual allegations against Dr. Robinson for failure to obtain an accurate history, failure to obtain necessary referrals, failure to properly document patient sessions, failure to refrain from exploiting her power differential over Plaintiff, failure to discontinue the professional and therapeutic physician-patient relationship when she began having emotional or sexual attraction to Plaintiff, and failure to refer Plaintiff to an alternative psychiatrist when she began having emotional or sexual attraction to Plaintiff, the Renewed Petition is GRANTED. The United States is SUBSTITUTED for Dr. Robinson as to the actual non-romantic and actual non-sexual acts.

   b. As to the remainder of the factual allegations, the Renewed Petition is DENIED. Dr. Robinson remains the party defendant.

36

**SO ORDERED.**

Dated:  April 21, 2025 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 21, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager